**Glenda SMITH and Ray Martin, Plaintiffs/Appellants,**

v.

**Howard BARTON, Larry Barnes, Jack Ugaki, and Brian Wardle, Defendants/Appellees.**

No. 88–4230.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1989.

Decided Sept. 19, 1990.

Frederick S. LeClercq, Knoxville, Tenn., for plaintiffs/appellants.

Richard L. Stubbs, Quane, Smith, Howard & Hull, Boise, Idaho, for defendants/appellees.

Before BROWNING and FLETCHER, Circuit Judges, and REED,[*] District Judge.

EDWARD C. REED, Jr., Chief District Judge:

## OVERVIEW

This is an action for damages, injunctive and declaratory relief brought by Glenda Smith[1] and Ray Martin. Smith and Martin were former employees of the Idaho Commission for the Blind (the "Commission"). They contend that a restructuring of the Commission, whereby both plaintiffs lost their jobs, violated their rights under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Supp.1990) (the "Rehabilitation Act"). Further, plaintiffs brought claims under 42 U.S.C. § 1983 for alleged violations of their First Amendment right to free association. Plaintiffs appeal from the magistrate's decision[2] granting defendants' motion for summary judgment and dismissing plaintiffs' section 1983 claims. In addition, plaintiffs contend that the magistrate erred in denying them relief on their claims of handicap discrimination under the Rehabilitation Act, in denying them a jury trial, and in excluding a newly discovered audiotape and transcript of a meeting of the Commission.

## FACTS

Plaintiffs Smith and Martin, both totally blind, were former employees of the Commission. The Commission is an Idaho state agency that receives state and federal funding. Smith formerly served as Chief, Field Services; Martin was employed as Chief, Orientation and Adjustment Center. Both Smith and Martin were active members of the National Federation for the Blind ("NFB").

Defendants Howard Barton, Larry Barnes, and Brian Wardle are all former members of the Commission. Defendant Jack Ugaki is a current member of the Commission. All defendants, except Wardle, are sighted. During July of 1984, Defendant Barton spearheaded a reorganization plan that consolidated the positions held by plaintiffs and created a new position, Chief of Rehabilitation Services. Barton justified the reorganization on grounds that the new structure would be more efficient and would prevent federal and state funding cutbacks. The reorganization was approved by defendants Barnes, Ugaki, and Wardle. Plaintiffs were informed that under the reorganization they would continue to be employed at their present salary, but as staff personnel. Plaintiffs were invited to apply for the newly-created position of Chief of Rehabilitation Services, and both did, in fact, apply. Edward Easterling ultimately was appointed to fill the new position.

Plaintiffs' complaint, filed September 21, 1984, raised two basic claims for relief, both arising from the same actions of defendants. First, counts I and II alleged that the reorganization of the Commission constituted constructive discharge because of their blindness, in violation of section 504 of the Rehabilitation Act. Second,

---

[*] Honorable Edward C. Reed, Jr., Chief United States District Judge for the District of Nevada, sitting by designation.

1. Frank Smith, plaintiff below, died following the commencement of this litigation. His spouse, Glenda Smith, as personal representative of his estate, was substituted as a party plaintiff. Subsequent references in this order to "Smith" shall be to Frank Smith.

2. The parties consented to have Magistrate Williams try the case.

counts III and IV alleged that the reorganization was a retaliatory measure instituted because of their membership in the NFB. Therefore, plaintiffs' second theory was brought under 42 U.S.C. § 1983, on grounds that the reorganization/constructive discharge also violated their First Amendment right of free association and their Fourteenth Amendment rights to due process and equal protection under the law.[3]

The magistrate granted summary judgment dismissing plaintiffs' constitutional claims brought under 42 U.S.C. § 1983, on the ground that they were precluded by the Rehabilitation Act. Denying plaintiffs' timely demand for a jury trial, the magistrate conducted a bench trial on the merits of defendants' alleged violation of section 504 of the Rehabilitation Act. By findings of fact and conclusions of law entered August 1, 1988, the magistrate found that plaintiffs had failed to establish a *prima facie* case of discrimination under Rehabilitation Act. The magistrate simultaneously entered an order denying plaintiffs' post-trial motion to admit a newly discovered audiotape and transcript of a Commission meeting that was conducted on September 5, 1984.

## DISCUSSION

### I. PRECLUSIVE EFFECT OF THE REHABILITATION ACT

#### A. *Standard of Review*

A magistrate's grant of summary judgment is reviewed *de novo*. *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir.1989). The reviewing court shall view the evidence in the light most favorable to the non-moving party to determine whether the sub-stantive law was applied correctly and whether there was any issue of material fact. *Id.* See also *Liberty Bank of Montana v. Travelers Indem. Co. of America*, 870 F.2d 1504, 1505–06 (9th Cir.1989).

#### B. *Analysis*

Section 504 of the Rehabilitation Act prohibits discrimination against the handicapped in any program or activity receiving federal financial assistance. It provides in pertinent part:

> No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) [29 U.S.C. § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794 (Supp.1989).

42 U.S.C. § 1983 provides a remedy for violations of rights secured by the Constitution or federal statutes, where such violations were committed under color of state law.[4] *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987).

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court announced the general rule that a section 1983 claim could be predicated solely on a violation of a federal statute. *Id.* at 4–8, 100 S.Ct. at 2504–06. In *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) the Court reiterated two exceptions to the general rule of *Thiboutot*. Of particular relevance here, the Court held that a section 1983

---

**3.** The only First Amendment violation alleged in Counts III and IV of plaintiffs' complaint is their right to freedom of association. It does not appear that the complaint was ever amended to include a free speech claim. However, the magistrate's order granting summary judgment suggests that plaintiffs also alleged a violation of their right to free speech.

**4.** 42 U.S.C. § 1983 provides in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress

....

claim, based solely on a violation of a federal statute, does not lie where Congress has foreclosed a section 1983 remedy through a sufficiently comprehensive remedial and enforcement apparatus in the underlying federal statute. *Middlesex*, 453 U.S. 1, 19–20, 101 S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981) (citing *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981)).

Relying on *Middlesex*, the magistrate found that the Rehabilitation Act provided a sufficiently comprehensive remedy to demonstrate congressional intent to supplant section 1983 claims, and therefore granted summary judgment dismissing plaintiffs' First Amendment claims. Defendants urge the same conclusion from this Court.

### 1. *"Could Have Been Brought"*

■ The magistrate's conclusion that plaintiffs' section 1983 claims were barred by the Rehabilitation Act is erroneous for two reasons. First, the doctrine of *Middlesex* only bars section 1983 claims that *could have been brought* under a separate federal statute which provides remedial devices sufficiently comprehensive to demonstrate a congressional intent to preclude section 1983 claims. Plaintiffs' First Amendment claims could not have been brought under the Rehabilitation Act because they allege violations that are unrelated to issues of handicap discrimination.[5] Indeed, plaintiffs' 1983 claims are not predicated on violations of a federal statute at all, but on alleged violations of their rights under the First Amendment.

The alleged injuries suffered by plaintiffs are unrelated to their status as handicapped individuals. Their section 1983 claims allege that they suffered injury because of their activities, rather than because of their handicap. Indeed, plaintiffs argue that they suffered two separate injuries, arising from two distinct discriminations: discrimination on account of their

blindness, in violation of the Rehabilitation Act, and discrimination on account of the exercise of their rights of free association and speech, in violation of the First Amendment. Although the NFB deals with concerns of the blind, free association and speech claims ought not to be foreclosed by the Rehabilitation Act, since the claims raise issues distinct from the right of blind people to be free from discrimination.

Furthermore, the authority relied on by the magistrate and cited by defendants is distinguishable from the case at bar.[6] Defendants primarily rely on *Tyus v. Ohio Dept. of Youth Serv.*, 606 F.Supp. 239 (S.D. Ohio 1985), for the proposition that plaintiffs' First Amendment section 1983 claims are precluded by the Rehabilitation Act.

In *Tyus*, the plaintiff was a former employee of the Ohio Department of Youth Services, who alleged that he was terminated from his employment because he suffered from epilepsy. *Id.* at 241. He brought claims alleging violations of section 504 of the Rehabilitation Act, and his Fourteenth Amendment rights of due process and equal protection. Relying on *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the *Tyus* court ruled that the Rehabilitation Act is sufficiently comprehensive to preclude suits under section 1983, "on either statutory or constitutional grounds, based upon claims that could be brought under the provisions of the Rehabilitation Act." *Tyus*, 606 F.Supp. at 244. The court went on to point out that plaintiff's section 1983 claim, brought pursuant to the due process and equal protection clauses, was based on the same alleged injury as was plaintiff's Rehabilitation Act claim. *Id.*

In contrast to *Tyus*, the section 1983 claims presented in the case at bar could not have been brought under the Rehabilitation Act. The constitutional claims allege discrimination based on plaintiffs' association with the NFB, and retaliatory re-

---

5. It is arguable that the magistrate's analysis justified dismissal of plaintiffs' due process and equal protection claims. However, this court need not address this issue, because plaintiffs

have not appealed the dismissal of their due process and equal protection claims.

6. This Circuit has not ruled previously on the preclusive effect of the Rehabilitation Act.

organization/constructive discharge precipitated by plaintiffs' outspoken support of the NFB and because of plaintiffs' pending lawsuit against defendants. These alleged injuries are not protected under the Rehabilitation Act, since the Rehabilitation Act "simply prevents discrimination on the basis of handicap." *Smith v. Robinson,* 468 U.S. at 1016, 104 S.Ct. at 3471. Plaintiffs' First Amendment claims do not raise handicap discrimination issues; they present alleged violations of rights possessed by all citizens, *i.e.,* the right to engage in protected First Amendment activities. The section 1983 claims require different proof from that required to prove discrimination under the Rehabilitation Act on the basis of plaintiffs' blindness.

### 2. *Comprehensive Remedial Structure*

■ The magistrate's conclusion that section 504 precludes plaintiffs' section 1983 claims also is erroneous because the Rehabilitation Act does not contain a remedial structure sufficiently comprehensive to evince congressional intent to preclude section 1983 claims based on the First Amendment. Indeed, whether the remedial structure of the Rehabilitation Act demonstrates congressional intent to preclude *any* section 1983 claims is a matter of some disagreement. At least two lower courts have addressed the issue, and have permitted claims brought under both section 1983 and the Rehabilitation Act.[7] *See Rothschild v. Grottenthaler,* 716 F.Supp. 796, 801 (S.D. N.Y.1989) (Rehabilitation Act held to be "not so comprehensive as to [leave] no room for additional private remedies under

section 1983") (internal citations omitted), *later proceeding,* 725 F.Supp. 776 (S.D.N. Y.1989); *Shuttleworth v. Broward County,* 639 F.Supp. 654, 659–60 (S.D.Fla.1986) (Rehabilitation Act held not to preclude actions brought under section 1983; court noted reluctance of Supreme Court to infer congressional intent to preclude reliance on section 1983). *Cf. Alexander v. Chicago Park Dist.,* 773 F.2d 850, 855–56 (7th Cir. 1985) (Title VI and VII only preclude actions under section 1983 that are "based on" those titles; "only if the right asserted was created by Title VII must it be vindicated through the procedural system set up in that Act"), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

■ The rights plaintiffs seek to vindicate in their section 1983 claim were not created by section 504, but rather by the First Amendment. While there is disagreement over whether Congress intended to foreclose section 1983 claims that could have been brought under the Rehabilitation Act, there is no indication that Congress intended to foreclose section 1983 claims that are unrelated to handicap discrimination. The Rehabilitation Act should not serve as a barrier to handicapped individuals who allege violations of their rights under the First Amendment.

The magistrate erred in granting summary judgment on plaintiffs' section 1983 claim alleging violation of their First Amendment rights. We reverse that portion of the magistrate's judgment and remand for proceedings consistent with this opinion.[8]

---

7. In addition, although not expressly addressing the issue of whether the Act precludes claims under section 1983, several courts have recognized claims under section 1983 in cases that also were brought under the Act, thereby tacitly recognizing the propriety of such claims. *See, e.g., Pushkin v. Regents of Univ. of Colorado,* 658 F.2d 1372, 1382 (10th Cir.1981) (in action brought under section 504 of the Rehabilitation Act and section 1983, court permitted claims under both statutes, and held that plaintiff was not required to exhaust administrative remedies under either statute).

8. In ruling on plaintiffs' claims of handicap discrimination under section 504, the magistrate also found that the restructuring did not result

from a conspiracy to rid the Commission of members of the NFB. Plaintiffs appeal this conclusion as well. It appears that the magistrate confused plaintiffs' allegations of handicap discrimination under section 504 with their free association claims under the First Amendment. The magistrate evaluated both claims without noting that a determination under section 504 of whether plaintiffs were denied the position "solely by reason of their handicap," requires a different analytical framework from that needed to determine whether plaintiffs were discriminated against because of their association with the NFB. Plaintiffs' free association claims should be evaluated, on remand, in light of prevailing First Amendment jurisprudence, and not under section 504.

## II. RIGHT TO JURY TRIAL

### A. *Standard of Review*

Whether section 504 of the Rehabilitation Act provides a right to a jury trial is a question of law, receiving *de novo* review. *United States v. McConney*, 728 F.2d 1195, 1199–1204 (9th Cir.1984) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B. *Analysis*

■ Plaintiffs have requested a ruling on whether the Seventh Amendment right to a jury trial attaches to actions brought under section 504 of the Rehabilitation Act. However, before addressing the constitutional issue, we first analyze whether the statute itself expresses any intent to grant plaintiffs a jury trial. *See Tull v. United States*, 481 U.S. 412, 417 n. 3, 107 S.Ct. 1831, 1835 n. 3, 95 L.Ed.2d 365 (1987).

Section 504 is silent with regard to the availability of a jury trial. However, several courts addressing the issue have suggested that no right to a jury trial exists under section 504. *See, e.g., Doe v. Region 13 Mental Health–Mental Retardation Comm'n*, 704 F.2d 1402, 1407 n. 3 (5th Cir.1983) ("While we specifically do not decide this issue, jury trials do not appear to be a matter of right under the Rehabilitation Act of 1973"); *Shuttleworth*, 639 F.Supp. at 661 (no right to jury trial in section 504 case).

Because the "remedies, procedures, and rights" available under Title VI of the Civil Rights Act apply to violations of section 504,[9] we next look to Title VI to determine whether a jury trial right exists under that statute.[10] Title VI itself contains no grant of a jury trial. Furthermore, cases interpreting Title VI generally have found no such right. *See, e.g., Region 13 Mental*

*Health*, 704 F.2d at 1407 n. 3 ("The 'remedies ... and rights' available under title VI, like those under title VII, are essentially equitable in nature, and the 'procedures' available do not include juries").

For additional guidance, we look to cases interpreting Title VII: because of the similarities between Title VI and Title VII, courts frequently have looked to Title VII in determining rights and procedures available under Title VI. Although still open to some debate, courts generally have found no right to a jury trial under Title VII. *See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, — U.S. —, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990) (noting that the Court has never held that a plaintiff seeking backpay under Title VII has a right to a jury trial, and "assuming, without deciding," that such a plaintiff does not have this right); *Lehman v. Nakshian*, 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981) (in determining that a plaintiff in an action against the United States under section 15(c) of the Age Discrimination in Employment Act of 1967 is not entitled to a jury trial, the Court noted in dicta that "there is no right to trial by jury in cases arising under Title VII"); *Slack v. Havens*, 522 F.2d 1091, 1094 (9th Cir.1975) (no right to jury trial under Title VII).

Because neither section 504 nor Title VI explicitly provides for a jury trial, and because the caselaw interpreting Title VI and Title VII generally has not found a right to jury trial in those cases, we conclude that there is no statutory entitlement to jury trial in section 504 cases. Therefore, we next must evaluate whether a jury trial is required by the Constitution itself.

■ The Seventh Amendment guarantees a jury trial "[i]n suits at common law, where the value in controversy shall exceed

---

9. Section 505(a)(1) of the amended Act, 29 U.S.C. § 794a(a)(2) (1985), provides:

[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

10. *See generally Lloyd v. Regional Transp. Auth.*, 548 F.2d 1277, 1285–86 (7th Cir.1977), for a discussion of the similarities between Title VI and section 504 of the Rehabilitation Act. *Cf. Alexander v. Choate*, 469 U.S. 287, 293 n. 7, 105 S.Ct. 712, 716 n. 7, 83 L.Ed.2d 661 (1985) ("too facile an assimilation of Title VI law to Sec. 504 must be resisted").

$20.00 . . . ." When the right to a jury trial is invoked in an action based on a statute, as is the case here, *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), provides the appropriate analysis. There, the Court stated that the Seventh Amendment requires a jury trial on the merits in those actions that are "analogous to 'Suits at common law.' " *Id.* at 417, 107 S.Ct. at 1835. Determining whether statutory actions are "more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty," requires an analysis of both the nature of the action and the remedy sought. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity (citations omitted). Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 417–18, 107 S.Ct. at 1835. The Court reiterated an earlier conclusion that the second inquiry, characterizing the relief sought, is "more important" than finding a precisely analogous common law cause of action. *Id.* at 421, 107 S.Ct. at 1837 (citing *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)). *See also Terry*, 110 S.Ct. at 1345; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. ——, ——, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).

Although there were no discrimination actions at common law, plaintiffs' action is most closely analogous either to an 18th-century tort action or an action brought to enforce an express or implied employment contract. Such actions could have been brought in either courts of law or courts of equity, depending on the relief sought. *See generally* Heinsz, *The Assault on the Employment at Will Doctrine: Management Considerations*, 48 Mo.L.Rev. 855, 858–862 (1983) (providing historical background of the employment-at-will doctrine, and the evolution of employee protection). Therefore, this first factor is not persuasive authority either for or against the jury trial, and "leaves us in equipoise as to whether [plaintiffs] are entitled to a jury

trial." *Terry*, 110 S.Ct. at 1347. However, the second prong of the *Tull* analysis convinces us that plaintiffs are entitled to a jury trial on their section 504 claims.

The second, and more important factor, requires analysis and characterization of the relief sought by plaintiffs. In addition to seeking injunctive and declaratory relief, which relief here would be equitable in nature, *see Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311, 102 S.Ct. 1798, 1802, 72 L.Ed.2d 91 (1982) (injunction), *and United States v. New Mexico*, 642 F.2d 397 (9th Cir.1981) (declaratory judgment), plaintiffs also seek compensatory money damages. Money damages are "the traditional form of relief offered in the courts of law." *Curtis*, 415 U.S. at 196, 94 S.Ct. at 1009. The award of monetary relief is not necessarily always legal. *Id.* For example, damages may be equitable where they are restitutionary, "such as in 'action[s] for disgorgement of improper profits,' " *Terry*, 110 S.Ct. at 1348 (quoting *Tull*, 481 U.S. at 424, 107 S.Ct. at 1839).

However, the damages sought here are not merely incidental to or intertwined with injunctive relief, as are front pay and back pay, in which case they may be equitable.[11] *See Terry*, 110 S.Ct. at 1348. Although plaintiffs have requested injunctive relief, their request for damages is not incidental to that relief. They have sought damages to compensate them for their alleged loss of job responsibilities, status, and administrative leadership occasioned by defendants' actions. Monetary compensation for those losses would be in addition to, and distinct from, injunctive reinstatement. Therefore, because the remedies plaintiffs seek have "none of the attributes that must be present before we will find an exception to the general rule and characterize damages as equitable," we conclude that the remedies sought are legal. *Id.* at 1348.

Furthermore, money damages are available in the Ninth Circuit for violations of section 504. For example, in *Kling v. County of Los Angeles*, 769 F.2d 532, 534 (9th Cir.1985), the Ninth Circuit relied on

---

**11.** We note that plaintiffs have not requested either front pay or back pay.

*Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984) in awarding damages for a section 504 violation. Although *Kling* was reversed on other grounds, 474 U.S. 936, 106 S.Ct. 300, 88 L.Ed.2d 277 (1985), this position was later reaffirmed in *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1107 (9th Cir.1987). There, the court stated that plaintiffs suing under section 504 of the rehabilitation act "may pursue the full panoply of remedies, including equitable relief and monetary damages." This leaves little room for doubt as to the viability of that remedy in this circuit.[12]

Because money damages were sought in this case, and because that remedy is available in the Ninth Circuit, we conclude that the Seventh Amendment does entitle plaintiffs to a jury trial on their claims under section 504, and the magistrate erred in denying plaintiffs such right.

We emphasize that plaintiffs are not entitled to a jury trial merely because they brought claims under section 504. First, section 504 itself does not provide such a right, and the few cases addressing this issue have found that no such right exists under section 504. Second, most courts agree that there is no right to a jury trial under either Title VI or Title VII, both of which are used as guides for determining rights and privileges under section 504. Rather, plaintiffs' right to jury trial arises from the Seventh Amendment, because they seek relief that is legal in nature. Section 504 "actions seeking only equitable relief will be unaffected, and preliminary injunctive relief remains available without a jury trial even in damage actions." *Curtis*, 415 U.S. at 198, 94 S.Ct. at 1010.

### III. SECTION 504

Our determination that plaintiffs were erroneously denied a jury trial obviates the need for us to reach the other issues on appeal. However, in order to provide some guidance in the retrial of plaintiffs' claims under section 504, we include a brief analysis of the relevant law.

The Rehabilitation Act was the first major federal statute designed to protect the rights of and provide assistance to the handicapped people of this country. The version of section 504 in effect at the time plaintiffs sued states that "no otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794. The statute has been construed to provide a private right of action under section 504. *See, e.g., Zolin*, 812 F.2d at 1107; *Kling v. County of Los Angeles*, 633 F.2d 876, 878 (9th Cir.1980). Furthermore, administrative remedies, which result in suspension or termination of the federal assistance to the institutional recipient, do not afford individual complainants adequate relief. Therefore, private plaintiffs suing under section 504 need not first exhaust administrative remedies. *Kling*, 633 F.2d at 879.

To prevail in a case brought under section 504, a plaintiff must show that the plaintiff is:

(1) a handicapped person under the Act;

(2) otherwise qualified for the position sought;

(3) being excluded from the position solely by reason of plaintiff's handicap; and

(4) seeking a position that exists as part of a program or activity receiving federal financial assistance.

**12.** The Supreme Court has not decided "the extent to which money damages are available under Sec. 504," *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 630, 104 S.Ct. 1248, 1252, 79 L.Ed.2d 568 (1984), although in *Darrone* the Court did apply Title VI jurisprudence to a section 504 claim and authorize an award of backpay. In *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), at least five members of the Supreme Court concluded that compensatory relief probably is not available under Title VI, absent proof of discriminatory intent. Relying on *Guardians*, the Fifth Circuit has held that section 504 does not provide for damages in the absence of intentional discrimination. *See Marvin H. v. Austin Indep. School Dist.*, 714 F.2d 1348, 1357 (5th Cir.1983).

*Doe v. New York Univ.*, 666 F.2d 761, 774–75 (2nd Cir.1981). *See also Zolin*, 812 F.2d at 1107; *Bentivegna v. United States Dep't of Labor*, 694 F.2d 619, 621 (9th Cir.1982).

The magistrate found, and the parties do not contest, that plaintiffs were handicapped individuals under the Act, that they were otherwise qualified for the newly created position, Chief of Rehabilitation Services, and that the position existed as part of a program or activity receiving federal financial assistance. However, the magistrate found that plaintiffs had failed to establish the third criterion, i.e., that they were excluded from the position solely by reason of their handicap. This case is unusual in that the defendants disavow any reliance on plaintiffs' handicap.

Most section 504 suits are brought by plaintiffs who have been denied a job or some other benefit as a consequence of a classification or disqualification based on disability or perceived disability. B.L. Schlei & P. Grossman, *Employment Discrimination Law* 281 (2d ed. 1983). Consequently, most judicial and academic attention has been devoted to interpreting "otherwise qualified" and to defining the duty of "reasonable accommodation" to determine what constitutes "discrimination." (This case is different. No one disputes that the plaintiffs are qualified, "otherwise" or not, to do the job, and they seek no special accommodations.) Few courts have had the occasion to decide whether there was illegal discrimination against a handicapped person in the absence of these other issues. Rather, the difficult task facing most courts has been to decide when the failure to accommodate the handicapped constitutes illegal discrimination. *See, e.g., Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (deaf student rejected from clinical nursing program on the

ground that her handicap would make her unqualified to practice as a nurse).

■ Thus, allegations of discrimination against the handicapped ordinarily encompass activity other than discriminatory treatment caused by overt prejudices, such as that alleged by the plaintiffs in the present case. Commentators have identified four types of discriminatory barriers that handicapped persons may confront when seeking employment: (1) intentional discrimination for reasons of social bias; (2) neutral standards with disparate impact; (3) surmountable barriers to the impaired; and (4) insurmountable barriers to the impaired. *Prewitt v. United States Postal Service*, 662 F.2d 292, 305 n. 19 (5th Cir. 1981) (citing Note, *Accommodating the Handicapped: The Meaning of Discrimination Under Section 504 of the Rehabilitation Act*, 55 N.Y.U.L.Rev. 881, 883–84 (1980)).[13]

The method of analysis and allocation of burdens of proof and production differ depending on what type of discrimination is at issue, and on whether the employer denies or acknowledges reliance on the plaintiff's handicap as a basis for its employment decision. In the present case, where plaintiffs seek no special accommodation and instead allege discrimination based on discriminatory intent and where defendants disavow any reliance on the plaintiffs' handicap, the analytic frameworks employed in Title VII cases should apply. In *Doe v. New York Univ.*, 666 F.2d at 761, the court distinguished between the model of proof used in a case where the defendant disclaims any reliance on plaintiff's handicap as opposed to the more typical section 504 suit where defendant acknowledges reliance on plaintiff's handicap. In the former situation, which is similar to that presented in the case before this court, the *Doe v. N.Y.U.* court instructed that the standard Title VII models of proof might apply. *Id.*, 666 F.2d at 776. *See also,*

---

**13.** Most reported cases have addressed the latter three types of barriers because, perhaps, as the Supreme Court observed, most discrimination against the handicapped is due to apathy, not animus. *Alexander v. Choate*, 469 U.S. at 296, 105 S.Ct. at 717. In addition, the discrimination

resulting from disparate impact, or from surmountable or insurmountable barriers present novel legal issues not previously settled by traditional employment discrimination jurisprudence.

*Prewitt,* 662 F.2d at 305 n. 19 (Title VII jurisprudence "for the most part applicable" to intentional social-bias discrimination against handicapped persons, and Title VII disparate impact decisions relevant in determining disparate impact handicap discrimination. In contrast, contentions concerning surmountable and insurmountable barriers raise issues peculiar to handicap discrimination law.)

■ The magistrate relied on *Doe v. N.Y.U.* to conclude that because plaintiffs had failed to show that they were excluded solely by reason of their handicap, they had thereby failed to establish a *prima facie* case of discrimination under section 504. The magistrate misread *Doe v. N.Y.U.* Where defendants disclaim any reliance on the plaintiffs' handicap, as is the case here, *Doe v. N.Y.U.* suggests that a *prima facie* case can be established by proving that the plaintiff "applied for a position for which he was qualified and was rejected under circumstances indicating discrimination on the basis of an impermissible factor." *Id.* at 776. Thereafter, the burden shifts to the defendant to rebut the presumption of discrimination by coming forward with evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason. If the defendant does so, the burden then shifts back to the plaintiffs to demonstrate the proffered reason was not the true reason for the decision or that it encompassed unjustified consideration of the handicap itself, i.e., that the articulated reason is a pretext. *Id.* The ultimate burden, of course, remains with the plaintiffs. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In *Pushkin v. Regents of the Univ. of Colorado,* 658 F.2d 1372 (10th Cir.1981), the tenth circuit rejected the applicability of disparate treatment analysis to section 504 claims because it wished to avoid imposing the intent requirement of disparate treatment analysis. The court believed that "it would be a rare case indeed in which a hostile discriminatory purpose or subjective intent to discriminate solely on the basis of handicap could be shown." *Id.* at 1385. We agree. In *Pushkin,* however, the defendant did not disclaim reliance on plaintiff's handicap; the trial court found that the university had rejected Pushkin because of his handicap. The question facing the court was whether a doctor with multiple sclerosis was "otherwise qualified" to serve in a psychiatric residency program. The model of analysis we adopt would apply only in those cases where the defendant disavows any consideration of the plaintiff's handicap and the plaintiff alleges invidious discriminatory intent.

### CONCLUSION

For the reasons set forth, the case is REVERSED AND REMANDED for trial by jury on plaintiffs' claims of discrimination under section 504 of the Rehabilitation Act, plaintiffs' claims of discrimination under 42 U.S.C. § 1983, and all further proceedings consistent with this Opinion.