939 F.Supp. 765 (1996)
Shea T. BURNS-VIDLAK, a minor, by his mother and next friend, Honey BURNS, and George Cohn, Plaintiffs,
v.
Susan CHANDLER, in her official capacity as the Director of the Department of Human Services of the State of Hawaii, Defendant.
Civil No. 95-00892 ACK.
United States District Court, D. Hawai`i.
April 12, 1996.
*766 Bradford L. Tannen, Alston Hunt Floyd & Ing, Honolulu, HI, for plaintiffs.
Susan Barr, G. Cher Foerster, Office of the Attorney General, State of Hawaii, Honolulu, HI, for defendant.

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
KAY, Chief Judge.

BACKGROUND
This case involves a suit against defendant Susan Chandler, in her official capacity as the State of Hawaii's Director of Human Services, on the grounds that the State's QUEST health care program, prior to April 1, 1996,[1] violated the anti-discrimination provisions of the Rehabilitation Act and the Americans with Disabilities Act ("ADA") by categorically excluding similarly situated blind and disabled individuals from participation. Plaintiffs Shea T. Burns-Vidlak, by his mother and next friend Honey Burns, and George Cohn (collectively "Plaintiffs") also contend that the State is liable under 42 U.S.C. § 1983 because the program violated the Equal Protection Clause of the Fourteenth Amendment.
Plaintiffs filed their original complaint on November 2, 1995 and an amended complaint on January 29, 1996. On February 14, 1996, Plaintiffs filed their instant motion for partial summary judgment or, in the alternative, for preliminary injunctive relief. Plaintiffs seek partial summary judgment on the grounds that (1) the QUEST program violated the Rehabilitation Act, the ADA, and § 1983 and (2) therefore the State is liable for compensatory damages in an amount to be determined later. Plaintiffs also seek the Court to preliminarily enjoin the State from excluding Plaintiffs from receiving benefits under QUEST.
On March 4, 1996, the State filed an opposition and Plaintiffs filed a motion for class certification, which currently is scheduled for hearing on June 10, 1996. On March 11, 1996, Plaintiffs filed a reply.
This matter came before the Court for hearing on March 18, 1996. At the hearing, the parties agreed that the issue of injunctive relief would be mooted if the State implemented as planned, on April 1, 1996, an across-the-board asset test for participation in the QUEST program which would eliminate any discrimination against similarly situated blind and disabled applicants. This nondiscriminatory asset test would be identical to that used for aged/blind/disabled ("ABD") recipients under Medicaid. Also on April 1, 1996, the State planned to implement its new "QUEST-Net" program, which would provide limited coverage for former QUEST and ABD recipients with more assets than allowed under Medicaid. QUEST-Net was designed not to discriminate against blind or *767 disabled individuals solely on the basis of their disability.
The Court accordingly ordered the State to submit a report by April 8, 1996 on the implementation of changes to QUEST and of QUEST-Net and allowed Plaintiffs three days to respond. The State's report, filed April 8, 1996, indicates that neither QUEST as modified nor QUEST-Net denies coverage for blind or disabled individuals solely on the basis of their disability.[2]
Plaintiffs' "Second Supplemental Memorandum," filed April 11, 1996 in response to the State's report, states that they "do not dispute Defendant's factual statement of the current status of the proposed QUEST and QUEST-Net regulations." Plaintiffs' Second Supp. Mem. at 2. However, Plaintiffs contend the issue of injunctive relief is not moot because the State has not indicated (a) whether and when the federal Health Care Financing Administration ("HCFA") approved these new regulations; and (2) whether all qualified applicants (including blind and disabled individuals) are currently receiving coverage under these programs.
The Court disagrees with Plaintiffs. First, even assuming the new regulations have not been approved by HCFA, the State already has implemented them, and they are in effect. See Defendant's Supp. Mem. at 2 ("The modifications to QUEST Phase I and the new QUEST-Net program went into effect as of March 30, 1996, and all QUEST participants are subject to an asset test at this time."). Plaintiffs may bring a subsequent motion for injunctive relief in the event these new regulations are found to be invalid and the State reverts to a program which impermissibly discriminates against Plaintiffs. Second, the State has indicated that all qualified individuals, including those blind and disabled, may receive coverage under QUEST-Net or the modified QUEST program at this time if they so choose, and, in any event, this action has not been certified as a class action at this time.
The Court accordingly dismisses as moot at this time Plaintiffs' claim for injunctive relief. The only remaining issue is the State's liability for damages.

FACTS
The State of Hawaii Department of Human Services ("DHS") formed QUEST in order to broaden the health care services and coverage provided to Hawaii residents. QUEST integrates the preexisting fee-for-service health care plans utilized for recipients under Medicaid, AFDC, SHIP, and GA programs. Under QUEST these recipients will now receive health care through privatized managed-care health care providers rather than on a fee-for-service basis.
Phase I of the QUEST program was approved by the United States Health Care Financing Administration ("HCFA") in July 1993. Because QUEST is a pilot or "demonstration" program, HCFA granted waivers to the State of Hawaii under 42 U.S.C. § 1315 of certain statutory requirements for state health care programs mandated by 42 U.S.C. § 1396a. (Defendant's Opp., Exh. B.) In the program proposal submitted by DHS to the United States Secretary of Health and Human Services, Donna Shalala, DHS revealed the details of the QUEST program, including the fact that QUEST would not cover the aged, blind and disabled ("ABD") population. (Defendant's Opp., Exh. A at 5-1.)[3]
QUEST went into effect on August 1, 1994. Under Phase I of QUEST as it existed prior to April 1, 1996, Hawaii residents were eligible for health care coverage under QUEST if they met certain income requirements and were not blind or disabled. There was no *768 asset limitation, although there is one now for QUEST and under QUEST-Net. Specifically, residents could participate if they earned no more than 300% of the federal poverty level and were not certified as blind or disabled. Those who were blind or disabled could not receive benefits under QUEST but could continue to receive health benefits under Medicaid if they satisfied its more stringent income and asset limits. Under Medicaid, income cannot exceed 100% of the federal poverty level and assets cannot exceed $2000 for a family of one or $3000 for a family of two (for families larger than two, the asset limit increases by $250 for each additional family member).
Plaintiffs claim they applied to the QUEST program and were excluded solely on the basis of their disabilities. Both plaintiffs are disabled: plaintiff Burns-Vidlak is a 16-year old disabled individual and plaintiff Cohn is legally blind. (Plaintiff's Concise Stmt. at 5.) In addition, Plaintiffs do not meet the asset limits under Medicaid: both were denied benefits under Medicaid because they do not satisfy the asset limits imposed by Medicaid.
Effective April 1, 1996, DHS has amended Phase I of QUEST to impose the same asset test as under Medicaid. However, the income limit under QUEST remains at 300% of the federal poverty level. In addition, DHS has implemented the QUEST-Net program to extend coverage to the blind and disabled population as well as others who do not qualify under the amended QUEST program. (Defendant's Opp. at 8.) QUEST-Net applies a more lenient asset test to extend coverage to those who do not satisfy the Medicaid asset limits under the amended QUEST program but provides fewer benefits.
In July 1997, DHS plans to begin Phase II of the QUEST program, which is expected to cover more individuals (including more of the ABD population) under managed care. Phase II is not expected to deny benefits solely on the basis of blindness or disability.

SUMMARY JUDGMENT STANDARD
Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987).
Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. Id. Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir.1978).
The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. See Eisenberg v. Ins. Co. of North America, 815 F.2d 1285, 1289 (9th Cir.1987) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." Anderson, 477 U.S. at 250-51, 106 S.Ct. at 2511.
The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement *769 about a material issue of fact precludes the use of summary judgment." California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Franciscan Ceramics, 818 F.2d at 1468 (emphasis in original) (citing Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

DISCUSSION

I. CLAIMS UNDER REHABILITATION ACT AND ADA

Plaintiffs first claim that QUEST violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the ADA, 42 U.S.C. § 12132.

A. Legal Standards

Both the Rehabilitation Act and the ADA prohibit discrimination on the basis of disability. The Rehabilitation Act proscribes discrimination in all federally-funded programs, whereas the ADA applies only to public entities.
The Rehabilitation Act provides:
No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
29 U.S.C. § 794(a).
Similarly, the ADA provides:
Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
42 U.S.C. § 12132.
In order to obtain relief under section 504 of the Rehabilitation Act, a plaintiff must show (1) that he is handicapped within the meaning of the Act; (2) that he is otherwise qualified for the services sought; (3) that he was excluded from the services sought solely by reason of his handicap; and (4) that the program in question receives federal financial assistance. Dempsey v. Ladd, 840 F.2d 638, 640 (9th Cir.1987); Bonner v. Lewis, 857 F.2d 559, 562-63 (9th Cir.1988); Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir.1990).
Likewise, to establish a violation under the ADA the plaintiff must show (1) she is a qualified individual with disabilities; (2) she was either excluded from participation in or denied benefits of some public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. Tyler v. City of Manhattan, 857 F.Supp. 800 (D.Kan. 1994).[4]
The Code of Federal Regulations has outlined a narrow exception for when discrimination is allowed under the Rehabilitation Act and the ADA. Under both acts, classification of benefits or discrimination on the basis of disability are allowed only when "necessary." For example, under the ADA:
A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individual with a disability *770 or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

28 C.F.R. § 35.130(b)(8) (emphasis added).
The Section analysis of this provision in Appendix A to Part 35 states:
This prohibition [in 28 C.F.R. § 35.130(b)(8)] prohibits overt denials of equal treatment of individuals with disabilities, or establishment of exclusive or segregative criteria that would bar individuals with disabilities from participation in services, benefits, or activities.
. . . . .
In addition, paragraph (b)(8) prohibits the imposition of criteria that "tend to" screen out an individual with a disability.... A public entity may, however, impose neutral rules and criteria that screen out, or tend to screen out, individuals with disabilities if the criteria are necessary for the safe operation of the program in question.... Safety requirements must be based on actual risks and not on speculation, stereotypes, or generalizations about individuals with disabilities.
28 C.F.R. Ch. 1, Pt. 35, App. A, Analysis of § 35.130(b)(8) (July 1, 1994 ed.) (emphasis added).
Similarly, under the Rehabilitation Act:
A recipient [of Federal financial assistance], in providing any aid, benefit, or service, may not, ... on the basis of handicap: ... [p]rovide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others ....
45 C.F.R. § 84.4(b)(1)(iv) (emphasis added).
The Ninth Circuit has held that Section 504 of the Rehabilitation Act "`provide[s] handicapped victims of government discrimination a private right of action for damages against the government discriminator[,]' ... [and] allows (1) both monetary and non-monetary relief (2) against the federal government or entities receiving federal funds (3) without an exhaustion requirement." J.L. v. Social Sec. Admin., 971 F.2d 260, 264 (9th Cir.1992) (quoting Doe v. Att'y Gen'l of the United States, 941 F.2d 780, 789 (9th Cir. 1991)). The State has admitted that if it violated section 504, it is liable to Plaintiffs for damages.
The same would appear to hold for violations of the ADA, inasmuch as 42 U.S.C. § 12133, the enforcement provision for violations of § 12132 (ADA), states that remedies for violations of § 12132 shall be those set forth in 29 U.S.C. § 794a, the enforcement provision for violations of § 504 of the Rehabilitation Act. See 42 U.S.C. § 12117(b) (mandating that agencies coordinate standards under ADA and Rehabilitation Act so as not to produce inconsistencies); Vande Zande v. State of Wisconsin Dept. of Admin., 851 F.Supp. 353, 359 (W.D.Wis.1994) (ADA to be interpreted consistently with Rehabilitation Act); Rivera Flores v. Puerto Rico Tel. Co., 776 F.Supp. 61 (D.Puerto Rico 1991) (noting that Title II of ADA "adopts the remedies found in the enforcement provisions of § 505 of the Rehabilitation Act"); Torcasio v. Murray, 57 F.3d 1340, 1342-43 n. 2 (4th Cir.1995) (assuming without deciding that monetary damages available for violations of both Rehabilitation Act and ADA).
Finally, states have no Eleventh Amendment immunity from suit in federal court for violations of § 504 of the Rehabilitation Act or the ADA. See 42 U.S.C. § 2000d-7(a)(1) (Rehabilitation Act and ADA); 42 U.S.C. § 12202 (ADA).

B. Application

Plaintiffs contend that the following undisputed facts, which the State conceded at the hearing were undisputed,[5] require granting summary judgment in their favor:
1. Plaintiffs are disabled;
2. the State denied each of the Plaintiffs health care coverage under QUEST solely on the basis of their disability;

*771 3. Plaintiffs were otherwise qualified, aside from their disabilities, to receive coverage under QUEST;
4. QUEST receives federal financial assistance;
5. QUEST did not, until April 1, 1996, impose an asset restriction to receive coverage; and
6. Medicaid does impose an asset restriction to receive coverage, such that Plaintiffs are rendered ineligible for coverage under Medicaid.
The Court agrees. Plaintiffs have demonstrated, and the State concedes, that they were categorically denied coverage under QUEST, in comparison with nondisabled individuals in the same financial situation (that is, having similar income and assets), solely by reason of their disability. The State advances several arguments why it is not liable. None succeed.

1. "Solely" By Reason of Disability

First, the State argues that Plaintiffs were not discriminated against solely because of their disability but on the basis of financial criteria plus their disability, citing Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir.1992), for the proposition that where "others with the same handicap do not suffer the discrimination, then the discrimination does not result `solely by reason of [the] handicap.'" the State argues that because blind and disabled individuals with fewer assets were eligible for Medicaid, the discrimination was not based solely on disability.
The Court is not persuaded. First, QUEST categorically discriminated against all blind and disabled individuals, regardless of their financial circumstances. That some with fewer assets were protected by Medicaid does not negate the discrimination by QUEST. Second, in Johnson, the plaintiffs were discriminated against in relation to other similarly disabled individuals by reason of their low socioeconomic status. Id. at 1493. Had the plaintiffs in Johnson been more affluent, they would not have been discriminated against. Here, in contrast, Plaintiffs were discriminated against in relation to other similarly situated nondisabled individuals  had Plaintiffs here been nondisabled, they would have received coverage under QUEST. Accordingly, the Court finds that discrimination under QUEST was solely by reason of Plaintiffs' disability.[6]

2. HCFA Waiver

The State also argues it is not liable for any violations of the Rehabilitation Act or the ADA by reason of the waiver for the QUEST program it obtained from HCFA. The State contends that the HCFA waiver implicitly exempted QUEST from the anti-discrimination provisions of the Rehabilitation Act and the ADA, although it concedes that HCFA has no express authority to effect such a waiver. See Opp., Exh. E (application for waiver recites that program will comply with Rehabilitation Act and ADA).
In July 1993, the State received approval for its QUEST program from HCFA. In conjunction with its approval, HCFA granted to the State waivers of certain statutory requirements under 42 U.S.C. § 1396(a) for "state plans for medical assistance." These waivers are authorized under 42 U.S.C. § 1315. Among other things, HCFA granted QUEST a "uniformity" waiver for the provision in 42 C.F.R. § 431.50 which requires uniformity of state Medicaid plans for all services and all eligible recipients. HCFA granted this waiver specifically because the "SSI beneficiaries" excluded from QUEST's "non-demonstration" population  that is, the ABD population as defined under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1382  will receive benefits under Medicaid whereas the non-ABD "demonstration" population will receive modified benefits under QUEST. (Defendant's Opp., Exh. A at 6-1.)
The Court does not agree that the HCFA waiver waived compliance by the State with the Rehabilitation Act and the ADA. First, 42 U.S.C. § 1315 authorizes waivers only for requirements under 42 U.S.C. §§ 302, 602, 654, 1202, 1352, 1382, and 1396a  the Rehabilitation *772 Act and the ADA are not included. Second, none of the statutes for which § 1315 authorizes waivers contain anti-discrimination provisions.
Finally, it does not appear that the Social Security Administration has the authority to waive a state's compliance with the Rehabilitation Act or the ADA. See J.L. v. Social Sec. Admin., 971 F.2d 260, 268 (9th Cir.1992) ("SSA has no discretion to violate the Rehabilitation Act."); see also Alexander v. Choate, 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) ("[A]n otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled[.]") (emphasis added). Although J.L. involved the SSA's own regulations, its authority to "waive" compliance with anti-discrimination requirements would seem to be greater when regulating itself than when regulating others (that is, states). The Court accordingly finds that the HCFA waiver did not waive the State's requirement to comply with the Rehabilitation Act and the ADA.

3. "Necessity"

Finally, the State contends the "necessity" exceptions outlined in the Code of Federal Regulations absolve the State of liability. The State argues that QUEST does not violate the Rehabilitation Act or the ADA because it is "necessary" to exclude disabled individuals to ensure the financial viability of the program, citing at the hearing 45 C.F.R. § 84.4(b)(1)(iv) (Rehabilitation Act), quoted above in Section I.A., and 28 C.F.R. § 35.130(b)(1)(iv) (ADA).[7]
In particular, the State claims that in order to move from a fee-for-service health care plan to a managed health care plan like QUEST, QUEST needed to exclude the ABD population because the private health care providers to be utilized under QUEST lacked actuarial data on this group and, as a result, might have shied away from participating. Moreover, the ABD population purportedly has substantially higher health costs than the non-ABD population, so including the ABD group in the QUEST plan could particularly risk the financial viability of QUEST. See Defendant's Opp., Exh. C at i (noting that health care costs for the average ABD individual are 150% higher than for those in the AFDC, AFDC-related, GA and SHIP groups).[8]
Both provisions cited by the State however prohibit the provision of different or separate benefits to disabled individuals unless "such action is necessary to provide qualified handicapped persons with aids, benefits, or services that are as effective as those provided to others." Moreover, even where such different or separate benefits are provided to disabled individuals, they must be given an "equal opportunity" and the right to participate in the program that was not designed for them.
First, it is clear that the State's "financial viability" argument fails as a matter of law. This is not a case where Plaintiffs were offered participation in a separate program *773 in order to provide them with benefits just as effective as those provided to nondisabled individuals but still given the right to "opt out" of the separate program and participate instead in the general population program. Instead, Plaintiffs both were categorically excluded from participation in QUEST and were not offered participation in a separate program "as effective" as QUEST.
Second, even if the State were to rely on 28 C.F.R. § 35.130(b)(8), which prohibits discrimination unless "necessary for the provision of the service ... being offered," the section analysis of this provision makes clear, as Plaintiffs point out, that this provision "prohibits overt denials of equal treatment of individuals with disabilities."[9]

II. SECTION 1983

In addition to their Rehabilitation Act and ADA claims, Plaintiffs also seek damages[10] under 42 U.S.C. § 1983 on the grounds that QUEST violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against the blind and disabled.[11]
First, the Court notes it has found that Plaintiffs may recover under the Rehabilitation Act and the ADA directly. The Court also finds that Plaintiffs' § 1983 claims for damages are barred by the Eleventh Amendment. See Quern v. Jordan, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979) (§ 1983 does not override traditional sovereign immunity of states under Eleventh Amendment); Blaylock v. Schwinden, 862 F.2d 1352, 1353-54 (9th Cir.1988) (damages claims against state officials sued in their official capacities are barred by sovereign immunity); Eisfelder v. Michigan Dept. of Natural Resources, 847 F.Supp. 78, 82 (W.D.Mich.1993) (dismissing § 1983 claim under Eleventh Amendment but retaining claims under Rehabilitation Act and ADA).[12]

CONCLUSION
For the foregoing reasons the Court GRANTS IN PART Plaintiffs' motion for partial summary judgment. The Court finds that Plaintiffs are entitled to recover damages under the Rehabilitation Act and the ADA for discrimination under QUEST prior to its amendment on March 30, 1996.[13] The Court DISMISSES Plaintiffs' § 1983 claims for lack of jurisdiction. Finally, the Court DISMISSES Plaintiffs' request for preliminary injunctive relief as moot.
The Court recognizes that the State has made a good faith effort to implement improved and more cost effective health care services through QUEST. Yet Congress has proscribed such discrimination against the blind and disabled even during a transition *774 period leading finally to equal benefits. The State could have included at the outset in QUEST the relatively small number of individuals in Plaintiffs' class, with or without reducing benefits across the board in order to accommodate them. The Court appreciates that this determination comes at a time when the State is suffering a serious shortage of funds. Nevertheless, Congress has mandated nondiscriminatory treatment of the blind and disabled and their rights must be upheld.
Pursuant to 28 U.S.C. § 1292(b), the Court is of the opinion that its finding of liability on the part of the State under the Rehabilitation Act and the ADA "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Specifically, if it is held that the State did not violate these acts and that it otherwise is not liable to Plaintiffs for damages, numerous individual determinations of such damages may be avoided. Accordingly, if the Ninth Circuit permits appeal from this order, further proceedings in this action will be stayed pending that appeal.
IT IS SO ORDERED.
NOTES
[1] Unless indicated otherwise, any reference to the "QUEST" program shall refer to that program as it existed prior to April 1, 1996.
[2] The State's report also includes an unrequested and irrelevant discussion of qualified immunity. See Kentucky v. Graham, 473 U.S. 159, 167, 105 S.Ct. 3099, 3105-06, 87 L.Ed.2d 114 (1985) (qualified immunity not available as a defense in an official-capacity action). The Court does not appreciate such behavior and does not condone taking advantage of an opportunity to respond to a specific request from the Court by raising other matters without prior approval. Moreover, at the hearing, the State admitted that if it violated § 504 of the Rehabilitation Act, it is liable to Plaintiffs for damages.
[3] DHS' application to the SSA for a waiver recited that the QUEST program would comply with the Rehabilitation Act and the ADA. See Opp., Exh. E.
[4] See also Voytek v. Univ. of California, 1994 WL 478805 (N.D.Cal.1994), aff'd, 1996 WL 65243 (9th Cir.1996) (unpublished) (affirming grant of summary judgment on grounds plaintiff failed to establish prima facie case under Rehabilitation Act and noting the parties "conceded the elements of the ADA are identical to the requirements of proof under section 504 of the Rehabilitation Act").
[5] Later on during the hearing, Defendant retracted her concession as to fact number 2.
[6] Defendant also argued at the hearing that QUEST, as a new demonstration program, did not exclude Plaintiffs but simply included certain classes of individuals, not including Plaintiffs. This "the cup is not half-empty, it's half-full" argument lacks merit.
[7] 28 C.F.R. § 35.130(b)(1)(iv) provides:

A public entity, in providing any aid, benefit, or service, may not, ... on the basis of disability, [p]rovide different or separate aids, benefits, or services to individuals with disabilities ... than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others[.]
Id. (emphasis added).
The Section Analysis of this paragraph states: Paragraph (b)(1)(iv) permits the public entity to develop separate or different aids, benefits, or services when necessary to provide individuals with disabilities with an equal opportunity to participate in or benefit from the public entity's programs or activities, but only when necessary to ensure that the aids, benefits, or services are as effective as those provided to others.... Even when separate or different aids, benefits, or services would be more effective, ... a qualified individual with a disability still has the right to choose to participate in the program that is not designed to accommodate individuals with disabilities.
28 C.F.R. Ch. 1, Part 35, App. A, Section Analysis of § 35.130(b)(1)(iv) (July 1, 1994 ed.) (emphasis added).
[8] The Court notes however that at the hearing, the State admitted that raw actuarial data on the ABD population was available in computer format prior to the implementation of QUEST.
[9] At the hearing, Defendant appeared to have abandoned her reliance on this provision in light of the language quoted. Plaintiffs argued that pursuant to 28 C.F.R. § 35.130(b)(8), (1) overt discrimination is prohibited and (2) neutral rules having a "disparate impact" may be allowed but (3) only if such neutral rules are "necessary for the safe operation of the program in question." 28 C.F.R. Ch. 1, Part 35, App. A, Section Analysis of § 35.130(b)(8) (July 1, 1994 ed.) (emphasis added). The Court agrees that the language of the section analysis supports Plaintiffs' interpretation.
[10] As discussed above, their claim for injunctive relief is moot.
[11] To the extent Plaintiffs base their § 1983 claim solely on a violation of the Rehabilitation Act or the ADA, it appears unsettled in the Ninth Circuit whether these acts provide a sufficiently comprehensive remedial structure so as to bar, under Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), § 1983 claims based on their violation. See Smith v. Barton, 914 F.2d 1330, 1335 (9th Cir.1990) (noting "disagreement over whether Congress intended to foreclose section 1983 claims that could have been brought under the Rehabilitation Act").
[12] Suits against state officers for declaratory or injunctive relief are not barred by the Eleventh Amendment, even if the injunctive relief costs the state money, so long as the money is for prospective relief. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (prospective declaratory and injunctive relief in suit against state official sued in official capacity not barred by Eleventh Amendment); Edelman v. Jordan, 415 U.S. 651, 661-69, 94 S.Ct. 1347, 1355-58, 39 L.Ed.2d 662 (1974) (discussing how prospective injunctive relief can drain state coffers). Here, however, Plaintiffs' request for injunctive relief is moot.
[13] The State has indicated that QUEST-Net as well as the modifications to QUEST Phase I went into effect as of March 30, 1996.