**J.L., and K.P., on behalf of themselves and all others similarly situated; Share Ourselves, Plaintiffs–Appellants,**

**v.**

**SOCIAL SECURITY ADMINISTRATION, Gwendolyn S. King, Commissioner of Social Security, and Louis D. Sullivan, M.D., Secretary of the Department of Health and Human Services, in their official capacities, Defendants–Appellees.**

No. 91–55267.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1991.

Decided July 15, 1992.

Gill Deford, Nat. Senior Citizens Law Center, Los Angeles, Cal., for plaintiffs-appellants.

Deborah Ruth Kant, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

FLETCHER, Circuit Judge:

Appellants allege that certain practices of the Social Security Administration ("SSA") discriminate against them on the basis of handicap and seek declaratory, injunctive, and monetary relief under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. They appeal the district court's dismissal of their complaint under Federal Rule of Civil Procedure 12(b)(6), and its holdings that section 504 does not authorize suit by private persons against the government, that sovereign immunity bars suit against the government, and that the district court is without jurisdiction to grant relief. Although our reasoning differs from that of the district court, we too dismiss, but without prejudice to allow the plaintiffs to pursue administrative remedies and then return to federal court if appropriate.

## FACTS

For the purposes of this appeal, we accept as true all factual allegations in the complaint. J.L., K.P. and the class they seek to represent are mentally handicapped persons eligible for Supplemental Security Income ("SSI"). They allege that the application procedures for SSI are so complex and demanding that they cannot; due to their mental handicaps, obtain payments to which they are entitled. The application process involves requesting and properly completing lengthy application forms; waiting in crowded SSA offices; recalling and articulating detailed information about personal, medical and psychiatric history; securing and providing information and documents from outside sources; responding to written and oral instructions from numerous SSA employees; locating various offices to which they must report and timely keeping appointments; and comprehending and complying with strict time deadlines. Complaint ¶ 16. The symptoms of many of the mentally ill applicants—severe confusion, memory loss, hallucinations, paranoid delusions, depression and mania, extreme fearfulness and anxiety, inability to concentrate, and inability to interact with strangers—make it impossible for them to complete the demanding application process. ¶ 15, 17.

Plaintiff J.L., for example, has been diagnosed as paranoid schizophrenic; his symptoms include paranoid delusions, auditory hallucinations, poverty of affect, withdrawal, anxiety, fearfulness, and periods of confusion. His mental disability caused him to lose his job and to become destitute and homeless; it also prevented him from fulfilling the administrative requirements of the SSI application process. ¶ 19–26. Plaintiff K.P. has been diagnosed as having major depression and post-traumatic stress disorder; her symptoms include memory loss, panic attacks, extreme anxiety, apathy, fatigue and withdrawal. She retreated to her bedroom, unable to leave the house or to work. Because of her mental illness, she was unable to travel without assistance to meet with SSA's psychiatrist, and her application was subsequently denied for her failure to do so. She has been unable to successfully complete subsequent applications. ¶ 36–44.

Plaintiffs allege that SSA has failed to adopt policies or practices reasonably designed to accommodate the needs of applicants with mental disabilities. It does not supply extra assistance from staff, nor attempt to secure necessary information from friends, family, social workers or others. ¶ 17. Plaintiffs allege that SSA's failure to accommodate to the needs of mentally disabled applicants constitutes discrimination on the basis of handicap. ¶ 18.

On July 27, 1990, J.L. and K.P. brought suit, claiming that the SSA's application procedures violated section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, which prohibits discrimination on the basis of handicap "under any program or activity conducted by any Executive agen-

cy."[1] The suit was brought as a class action, seeking to represent "all persons residing in the County of Orange [California] who are eligible for SSI but cannot obtain benefits, or whose benefits are delayed, because their mental illnesses prevent them from commencing or successfully completing the SSI application procedure." ¶ 10.[2] By way of relief, plaintiffs seek a declaration that SSA's failure to assist mentally disabled applicants in completing the application process violates the Rehabilitation Act and that the application process itself denies SSI benefits to mentally disabled applicants because of their disabilities in violation of the Act. They also seek to enjoin SSA from discriminating against them in the future.

Plaintiff Share Ourselves ("SOS") is a private not-for-profit organization that provides material and financial assistance to the homeless, hungry and destitute of Orange County. SOS claims that SSA's discrimination against mentally handicapped SSI applicants has forced SOS to expend its resources to assist people who would otherwise not need its help. In addition to joining in the suit for declaratory and injunctive relief, SOS seeks $50,000 in damages to compensate it for the money it need not have spent absent the discrimination.

The complaint does not allege that any plaintiff pursued administrative remedies or otherwise tried to convince SSA to change its application procedures. Nor does it allege that such attempts would have been futile.

SSA filed a motion to dismiss, arguing, among other things, that section 504 did not authorize private suits against the federal government, that plaintiffs should pursue their remedies under the Administrative Procedures Act, and that SOS lacked standing to sue. The district court issued a Tentative Ruling that dismissed the section 504 claims as unauthorized by statute and barred by sovereign immunity, and also held that it lacked jurisdiction to entertain the claims. In an order filed December 6,

1990, the district court granted the motion to dismiss "in accordance with the Tentative Ruling," but allowed plaintiffs 30 days to amend their complaint. They did not do so; a final judgment was entered January 22, 1991. Plaintiffs timely appeal.

## JURISDICTION

The district court in its Tentative Ruling concluded that it had no jurisdiction to hear the claim because federal question jurisdiction under 28 U.S.C. § 1331 is barred by 42 U.S.C. § 405(h). The district court erred. Section 405(h) provides that jurisdiction over cases "arising under" the Social Security Act can be had only upon the terms described in 42 U.S.C. § 405(g). Because plaintiffs' claims are predicated on the Rehabilitation Act, they do not "arise under" the Social Security Act. Jurisdiction under 28 U.S.C. § 1331 was not precluded, nor was it precluded under 28 U.S.C. § 1361 (mandamus).

Appellate jurisdiction over the final order of dismissal derives from 28 U.S.C. § 1291.

## STANDARD OF REVIEW

Dismissals under Rule 12(b)(6) are matters of law, reviewed *de novo*. *Klarfeld v. United States*, 944 F.2d 583, 585 (9th Cir. 1991).

## DISCUSSION

### I. STATUTORY SOURCES OF RELIEF

The parties agree that plaintiffs are entitled to a forum in which to air their claims of discrimination. They disagree over the forum and the vehicle: plaintiffs contend that they may obtain relief by suit commenced in district court under the Rehabilitation Act, while SSA insists that they must seek an administrative remedy under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* ("APA"). We begin by examining the structures of the two statutes.

---

**1.** They also alleged due process and equal protection violations, claims that were dismissed and not appealed.

**2.** Because of the Rule 12(b)(6) dismissal, there has been no opportunity for class certification.

The APA provides a mechanism for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to obtain judicial review and relief "other than money damages." 5 U.S.C. § 702. A reviewing court has the power to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). It may also "hold unlawful and set aside agency action ... found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). For agency action to be reviewable under the APA, it must be "final." 5 U.S.C. § 704. In this case, finality would require that plaintiffs exhaust the administrative procedure set forth in 45 C.F.R. § 85 ("Enforcement of Non–Discrimination on the Basis of Handicap in Programs or Activities Conducted by the Department of Health and Human Services").[3]

Section 504 of the Rehabilitation Act of 1973 (as amended) states:

> No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794. Like the APA, the Rehabilitation Act may be used to obtain redress from the government. "Congress unequivocally expressed its intent [in section 504] to provide handicapped victims of government discrimination a private right of action for damages against the government discriminator." *Doe v. Attorney General of the United States*, 941 F.2d 780, 789 (9th Cir.1991). The Rehabilitation Act differs from the APA in other respects. In enacting section 504, Congress intended "not to limit victims of government discrimination to enforcement through injunctive relief under the APA but to permit enforcement through the same means available against private parties: enforcement in the courts with damages and equitable relief." *Id.* at 794. *See also Franklin v. Gwinnett County Public Schools*, —— U.S. ——, 112 S.Ct. 1028, 1035, 117 L.Ed.2d 208 (1992) ("The general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute"). Also unlike the APA, the Rehabilitation Act contains no *per se* exhaustion requirement; parties may proceed directly to district court. *See Greater Los Angeles Council on Deafness, Inc. v. Baldridge*, 827 F.2d 1353, 1361 n. 6 (9th Cir.1987); *Kling v. County of Los Angeles*, 633 F.2d 876, 879 (9th Cir.1980).[4]

▄ As these brief descriptions reveal, the two statutes overlap considerably. Plaintiffs may invoke the APA (1) to obtain relief other than money damages (2) from the federal government (3) following the exhaustion of administrative remedies. The Rehabilitation Act is broader: it allows (1) both monetary and non-monetary relief (2) against the federal government or entities receiving federal funds (3) without an exhaustion requirement. Depending upon the relief they seek, plaintiffs alleging discrimination by the government may have a cognizable claim under either statute, or

---

**3.** Complaints are to be filed with the Office of Civil Rights, which must notify the complainant of the results of its investigation within 180 days. The complainant has the right to appeal. 45 C.F.R. § 85.61. If the investigation reveals that the agency has not complied with the Rehabilitation Act, the OCR "will undertake appropriate action ... to assure compliance." 45 C.F.R. § 85.62.

**4.** In the Committee Report on the Americans with Disabilities Act, Pub.L. 101–336, Congress expressed its understanding that the Rehabilitation Act did not always require exhaustion. "[C]onsistent with section 504, it is not the Committee's intent that persons with disabilities need to exhaust Federal administrative remedies before exercising their private right of action." H.Rep. No. 101–485, 101st Cong., 2nd Sess. 98 (1990), *reprinted in* [1990] 4 U.S.C.C.A.N. 267, 303, 381.

both.[5] The nature of the wrong alleged and the remedy sought determine the proper statutory route or routes.

## II. SHOULD THESE PLAINTIFFS' SECTION 504 CLAIM BE REINSTATED?

### A. Availability of APA Relief

We agree with the government that the plaintiffs in this case are exactly the ones envisioned by the APA: persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Because the APA was designed to unify and simplify grievance procedures, it is presumptively an appropriate vehicle with which to challenge agency action.

> [G]iven the vast number of federal laws, government agencies, and potential legal disputes, it makes sense to try to maintain a clear, orderly procedural way for injured persons to bring their claims against federal agencies before the courts. The APA was intended to provide just such a single uniform method for review of agency action. The APA was designed to supplant a variety of pre-existing methods for obtaining review that differed from one agency to another and sometimes hindered the efforts of injured persons to obtain relief.

*Cousins v. Secretary of U.S. Department of Transportation,* 880 F.2d 603, 605–06 (1st Cir.1989) (en banc) (citations omitted).

■ Section 504 contemplated that federal agencies themselves should take primary responsibility for compliance and directed them to "promulgate such regulations as may be necessary to carry out" its non-discrimination directive. 29 U.S.C. § 794. The Department of Health and Human Services, of which SSA is a part, responded by creating the administrative procedures outlined in 45 C.F.R. § 85. The mere existence of these procedures, however, does not necessarily determine whether their exhaustion is a prerequisite for judicial review in all cases. The doctrine of administrative exhaustion "should be applied with

a regard for the particular administrative scheme at issue." *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). *See also McCarthy v. Madigan,* —— U.S. ——, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (examining specific statutory scheme). The decision whether to require exhaustion "should also be guided by the policies underlying the exhaustion requirement." *Bowen v. City of New York,* 476 U.S. 467, 484, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986). "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger,* 422 U.S. at 765, 95 S.Ct. at 2467.

The present case is exactly the kind of complaint that would best lend itself to a solution developed by the agency rather than imposed upon it by a court. Plaintiffs charge that SSA's application procedures themselves have the effect of discriminating against the mentally handicapped, and that systemic change is necessary to eliminate the discrimination. The agency is in a far better position to determine how best to formulate and implement systemic change than is a court. If a court's intervention is required in the form of an APA suit, a Rehabilitation Act suit or both, its decision should be informed by a considerable body of information about the administration of the SSI program and SSA's internal organization and operations. If the plaintiffs present the problem to the agency in the first instance, an adequate record for decision will be generated. We recognize that plaintiffs' civil suit was halted at the complaint stage. Consequently we cannot know what information might be made available to the district court at later stages in the litigation. Nonetheless we believe that the type of information the

---

**5.** A single pleading may state multiple causes of action and request multiple forms of relief.

Fed.R.Civ.P. 8(a), (e).

court needs is more likely to be generated in useful form through an administrative proceeding than through the adversarial clash of deposition and discovery.

■ A careful reading of the Rehabilitation Act reveals that APA review of agency action is an appropriate vehicle to address allegations of discrimination by the government. The remedial section of the Rehabilitation Act explicitly adopts "the remedies [and] procedures ... set forth in Title VI of the Civil Rights Act of 1964." Section 505(a)(2), 29 U.S.C. § 794a(a)(2).[6] Title VI, in turn, provides for judicial review of agency actions "in accordance with chapter 7 of title 5 [the APA]." 42 U.S.C. § 2000d–2. This series of incorporations makes clear that Congress intended that the remedies and procedures of the APA would be available to correct agency action alleged to discriminate on the basis of handicap. Sending these plaintiffs back to the agency with the option of judicial review under the APA if administrative remedies are unavailing is therefore consistent with the broad remedial purpose of the Rehabilitation Act.

Plaintiffs may have framed their complaint exclusively under the Rehabilitation Act due to their perception that APA review would be unavailable to them. They cite our decision in *Cleghorn v. Herrington,* 813 F.2d 992 (9th Cir.1987) for the proposition that the court's power under the APA to enjoin agency action "otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), extends only to agency actions that conflict with the agency's own enabling statute, not with other substantive laws. The plaintiff in *Cleghorn* claimed that Department of Energy regulations requiring minimum physical fitness requirements for armed security guards at nuclear facilities violated the Age Discrimination in Employment Act ("ADEA"). That statute adopts the procedures of Title VII of the Civil Rights Act. *Cleghorn* held that the plaintiff's "attempt to use the APA to assert what is in effect a Title VII claim must

fail because it would allow him to circumvent, in direct contravention of congressional intent, the numerous procedural and substantive requirements of Title VII." *Id.* at 995. In reaching that conclusion, *Cleghorn* remarked that the plaintiff's argument—that APA review was the appropriate vehicle to challenge an agency action alleged to violate an entirely different statutory regime (the ADEA)—was a "novel theory." *Id.* at 994. Understandably, plaintiffs here were concerned that APA review might be unavailable to them. We conclude that *Cleghorn* is not the bar they fear. *Cleghorn* specifically left open the question of "whether any agency violation of a substantive statute or regulation can be the basis of a claim pursuant to the APA." *Id.* at 994–95. No subsequent Ninth Circuit cases have addressed the issue, but considerable out-of-circuit authority provides guidance.

Recent cases from other circuits suggest that the plaintiff's theory left undecided in *Cleghorn* is no longer novel. *Cousins v. Secretary of U.S. Department of Transportation,* 880 F.2d 603, 605 (1st Cir.1989) (en banc) is the first of a series of cases with explicit holdings on this point. In considering the court's power under the APA to set aside agency actions that are "otherwise not in accordance with law," the court remarked, "These words are general in their meaning; they do not restrict the courts to consideration of the agency's own enabling statute." *Cousins,* 880 F.2d at 608. *Cousins* rejected the view of *Cleghorn* advanced by plaintiffs here.

[W]e agree with the *Cleghorn* court that the APA cannot be used to circumvent the specific procedural requirements of other substantive federal statutes. But we do not agree with the broader view, suggested in *Cleghorn* and explicitly adopted in *Davidson [v. United States Department of Energy,* 838 F.2d 850 (6th Cir.), *cert. denied,* 487 U.S. 1207, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988) ], that a challenge to agency action on the ground that it conflicts with a substan-

---

**6.** Title VI forbids discrimination in programs funded by the federal government. *Doe* explained that section 505(a)(2) of the Rehabilitation Act makes Title VI remedies available to victims of direct government discrimination as well. 941 F.2d at 787 n. 13.

tive federal statute (such as the Rehabilitation Act) must always be brought under that statute, and not under the APA. Such a view seems contrary to the APA's language and intent[.]

*Id.* at 609. *Accord, Ward v. Skinner,* 943 F.2d 157, 160 (1st Cir.1991) (the fact that agency action is challenged under the APA would not "prevent us from reviewing other claims of illegality—such as a claim that the Department's [action], say, rested on unconstitutional racial discrimination, or ... violated the Rehabilitation Act" (emphasis omitted)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1558, 118 L.Ed.2d 207 (1992); *Clark v. Skinner,* 937 F.2d 123 (4th Cir.1991) (APA review is a suitable method to challenge a Department of Transportation decision on the grounds that it violated the Rehabilitation Act). *See also Japan Whaling Association v. American Cetacean Society,* 478 U.S. 221, 231 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986) ("A separate indication of congressional intent to make agency action reviewable under the APA is not necessary; instead, the rule is that the cause of action for review of such action is available absent some clear and convincing evidence of legislative intention to preclude review.") The recent cases explicitly stating this principle build on the many prior cases that have simply assumed without discussion that a plaintiff may challenge agency action under the APA on the grounds that it conflicts with a federal statute other than the agency's enabling statute. *See* cases collected in *Cousins,* 880 F.2d at 609.[7]

In *Davidson,* the case criticized by *Cousins,* the Sixth Circuit examined the same DOE regulations challenged in *Cleghorn* against a claim that they discriminated on the basis of sex and age in violation of Title VII and the ADEA. Unlike *Cleghorn,* the plaintiffs in *Davidson* also asserted an independent claim of discrimination on the basis of handicap under the Rehabilitation Act. *Davidson* adopted *Cleghorn's* reasoning that Title VII procedures may not

be evaded by framing the complaint as arising under the APA, but explicitly extended it to the Rehabilitation Act. 838 F.2d at 854. In doing so, unfortunately, it ignored crucial differences between ADEA's Title VII remedies and the Rehabilitation Act's Title VI remedies. As explained above, the Rehabilitation Act explicitly incorporates the remedies and procedures of Title VI, which incorporates the APA. Plaintiffs who protest Rehabilitation Act violations by seeking APA review do not evade Congress's statutory scheme; they follow it. We decline to adopt the rule in *Davidson* so far as it purports to preclude APA review of agency actions alleged to violate the Rehabilitation Act.

■ Plaintiffs also appear to believe that APA review, even if available, would be inadequate to their needs. First, plaintiffs suggest that were they to sue under the APA, they would face the more difficult burden of showing that SSA's actions were "arbitrary, capricious [or] an abuse of discretion," rather than simply meeting the familiar preponderance of the evidence standard of civil litigation. Plaintiffs would have a point if we were looking solely at an agency's factual findings or its choice of one among many otherwise lawful methods of implementing a statute. But their argument neglects the court's power under the APA to set aside agency actions that are "otherwise not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). Even though the court's power to compel or strike down agency action derives from the APA, the threshold determination—whether agency action or inaction violates a substantive law—is a question of law determined *de novo* once the plaintiffs reach the court for review of a final agency determination. Plaintiffs who present proof that an agency has violated a statute have perforce shown that it has acted "not in accordance with law" and

7. These cases include one from this circuit: *Internal Revenue Service, Fresno Service Center v. Federal Labor Relations Authority,* 706 F.2d 1019, 1023 (9th Cir.1983) (court employs § 706(2)(A) standard to determine if an EEOC regulation promulgated under the Civil Rights Act violated labor union's rights under the Civil Service Reform Act).

"in excess of statutory jurisdiction, authority or limitation." Phrased alternately, SSA has no discretion to violate the Rehabilitation Act. *Cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) (with regard to the standard of appellate review in Rule 11 cases, "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law").

This reading in no way alters our deferential standard of review over actions within an agency's discretion or over reasonable agency interpretations of statutes it is charged with administering. While SSA's exercise of its discretion within, and its interpretations of, the Social Security Act are accorded extra weight, the question that would be presented in an APA challenge in this case is whether SSA has complied with the Rehabilitation Act, a statute over which it claims no special expertise. *See, e.g., Cousins*, 880 F.2d at 609–610 (Department of Transportation had no special expertise in interpreting Rehabilitation Act; it "must comply with whatever legal requirements § 504 places upon it"); *Federal Labor Relations Authority v. Department of the Treasury*, 884 F.2d 1446, 1451 (D.C.Cir.1989) (FLRA has no special expertise with regard to the Privacy Act or Freedom of Information Act).

Second, plaintiffs contend that the record compiled in an administrative proceeding would be inferior to the one that would be created through discovery under the Federal Rules of Civil Procedure. Like the First and Fourth Circuits, we see no reason why plaintiffs would not be able to create a record every bit as persuasive in an administrative proceeding as they could in civil litigation. *See Clark*, 937 F.2d at 126 ("The administrative record developed could well include all of the grounds and arguments presented to the district court"); *Cousins*, 880 F.2d at 610 (plaintiff "can submit to DOT all the evidence and legal arguments that he would like to include in the record for judicial review").

Third, plaintiffs contended at oral argument that the scope of the court's injunctive power is less in the APA context than in a civil discrimination suit. The APA grants the federal judiciary the power to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Nothing in this language, or in our cases, limits a court's capacity to fashion an appropriate injunction if plaintiffs are able to prove that SSA has illegally discriminated on the basis of handicap.

To summarize, the APA is both available and adequate to review plaintiffs' claims for injunctive and declaratory relief. Whether this suit is characterized as review of agency action under the APA or a private suit directly under the Rehabilitation Act "should not make a significant difference to [plaintiffs'] chances for success on the merits." *Cousins*, 880 F.2d at 605.

### B. Availability of Relief Under Section 504

 The APA does not afford complete relief in this case, however, because it does not provide for the award of money damages sought by plaintiff SOS.[8] This component of relief must come from a suit under the Rehabilitation Act.

---

**8.** Because it dismissed all plaintiffs for failure to state a claim under section 504, the district court did not address SSA's contention that SOS lacked standing. As we explain in this section of the opinion, we dismiss the section 504 claim without prejudice so that plaintiffs may exhaust administrative remedies. Like the district court, we have no occasion to rule on standing.

If, after exhaustion, SOS returns to court as a plaintiff, the district court may then need to consider standing. When doing so, the district court should bear in mind the different tests for standing depending on whether SOS sues on its own behalf or on behalf of others. SSA regulations permit third parties to file administrative complaints on behalf of the alleged victims of discrimination. 45 C.F.R. § 85.3 (definition of "complete complaint"). Organizations also have standing to bring suit on behalf of their members. *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). If SOS sues to redress its own injuries, it must, like any other plaintiff, satisfy the constitutional and prudential considerations of standing as summarized in *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir.1987).

The district court dismissed the present case in part on the ground that the Rehabilitation Act did not waive sovereign immunity so as to authorize a private right of action against the federal government. The district court did not have the benefit of *Doe v. Attorney General,* decided subsequent to its decision. *Doe* held that Congress, in enacting section 504, waived sovereign immunity and created a private cause of action against the government. 941 F.2d at 789.

The plaintiff in *Doe* was a physician with AIDS. Upon suspicion that Doe was afflicted, the FBI, which had been sending its agents to him for routine physical exams, essentially stopped the flow of referrals. Doe sued, alleging discrimination on the basis of handicap. After careful analysis of the statute's language, 941 F.2d at 789–91, and review of legislative history, *id.* at 791–93, the *Doe* court held that the Rehabilitation Act provided a private cause of action against the federal government. The court opined:

> First, Congress intended to put the federal government on equal footing with everyone else in making it subject to section 504's prohibition of discrimination against the handicapped. Second, Congress intended to encourage private parties to pursue enforcement of Title V, including section 504, through private rights of action. The debates consider a purpose of both section 504 and 505(b) to be the development of uniformity under Title V's provisions, giving all handicapped persons an equal chance at justice. *The goal of uniform private enforcement cannot be accomplished by giving a right only to injunctive relief under the APA ... when the culprit is a federal agency.*

*Id.* at 792 (emphasis added).

SSA correctly points out that in *Doe,* the government was acting in its proprietary capacity; that is, it was taking action (contracting for medical services) that any private party might take. In this case the government acts in its regulatory capacity when it adopts and implements procedures for claimants to apply for SSI benefits.[9] SSA relies on this distinction to argue that *Doe* does not apply to regulatory activities and that the only remedy for regulatory agency action that discriminates against the handicapped is injunctive relief under the APA. *Doe* is not so limited.

*Doe's* conclusion that Congress intended to permit private suits against the government did not turn on the proprietary/regulatory distinction. Instead, it was based on exhaustive review of statutory language and legislative history. Nowhere in either of those sources was there any indication that a handicapped person's right to sue the government depended on whether the defendant agency was discriminating as proprietor rather than discriminating as regulator.

The issue arose in *Doe* only when we commented upon certain language from *Cousins.*[10] In doing so, we briefly acknowledged that the First Circuit "perceived [its] case as one involving a claim against a federal agency as regulator," 941 F.2d at 793 (emphasis omitted), but we pointedly avoided adopting the proprietary/regulatory dichotomy as the law of this circuit.

---

**9.** Many terms may be used to describe government actions that are not proprietary. "Regulatory," "administrative," and "governmental" have all been advanced during the course of this litigation. For uniformity's sake, we use the term "regulatory" in this opinion, and intend it to denote those non-proprietary actions that only a government could undertake.

**10.** Because the plaintiff in *Cousins* sought injunctive relief which could be obtained under the APA, the *Cousins* court found it "difficult to imagine a case" where a Rehabilitation Act suit "would be of much use to a plaintiff who wants to challenge agency action." 880 F.2d at 606. Thus, it declined to find "a right of action against the government as a regulator, distinct from the general, background right to challenge regulatory action under the APA." *Id.* at 607. By contrast, the plaintiffs in *Doe* and the present case *do* have use for relief beyond what the APA can offer, and *Doe* explained that the Rehabilitation Act provides it.

We accept on its face the First Circuit's characterization of the government's role as regulator in Cousins's case. We note, however, that we allowed a section 504 plaintiff seeking an injunction that would require a government defendant to issue regulations under section 504 to proceed in federal court, without government challenge. *Williams v. United States,* 704 F.2d 1162 (9th Cir.1983).

*Id.* at 793 n. 17.

Neither the language of *Doe* nor the structure of the Rehabilitation Act limits a private cause of action to those instances where the government discriminates in its proprietary capacity. Any such limitation would require courts to make unfamiliar and potentially unworkable threshold characterizations of agency actions as either proprietary or regulatory. Not all actions may be so easily classified. Therefore, we conclude that a plaintiff states a claim under the Rehabilitation Act by alleging that the government's action, regardless of whether it is labelled proprietary or regulatory, discriminates on the basis of handicap.

Once past that point, however, the proprietary/regulatory dichotomy does serve a limited function as a nonbinding indicator of whether the APA should provide the dominant paradigm for decision. Because regulatory actions are presumably the result of an administrative rulemaking process, administrative law principles may pertain. For example, plaintiffs are likely to seek change in government practice or policy as their desired remedy; in other words, they are more likely to seek relief "other than money damages." Such changes in policy can be more expeditiously obtained by taking the complaint directly to the agency. If the case eventually requires judicial intervention, formulation of an appropriate injunction will require that the court have access to the same information that the agency has. An administrative record of the type created by an exhaustion proceeding will be indispensable. On the other hand, proprietary actions are less likely to fit the administrative law paradigm, because they are by definition capable of being performed by non-governmental actors. If proprietary actions are alleged to cause harm, tort principles may be more applicable. *See Doe,* 941 F.2d at 793 (APA's purpose is "not to provide a forum for adjudicating government tort liability"). The victim of discriminatory proprietary action may be more likely to seek money damages rather than a change in policy, since the discrimination may not have been the result of formally adopted policy to begin with. For that same reason, the administrative record may be less illuminating, and so less necessary to a reviewing court.

■ Applied to the present case, these observations lead us to conclude that exhaustion is an appropriate prerequisite to this section 504 claim. The primary relief sought by all plaintiffs is a change in agency practices; the claim for damages derives from the same factual predicate.[11] While we recognize that the Rehabilitation Act does not require exhaustion of remedies in all cases, prudential concerns dictate exhaustion before resort to the courts in this case. We are particularly concerned with the need to create an adequate record for decision. The question is whether it will best be made by traditional means of developing a court record—discovery and trial—or whether an initial administrative proceeding is the better vehicle. We think the necessary insight into the operations of the agency is more likely to be generated in useful form through an administrative proceeding than through the adversarial clash of interrogatories, depositions and document productions. The agency should be a participant in the process, not an adversary to it.

---

11. Were plaintiffs seeking only money damages, our analysis might be different. *See McCarthy v. Madigan,* —— U.S. ——, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (prisoner need not exhaust Bureau of Prisons procedures when bringing *Bivens* action solely for money damages). Here, the claim for money damages is not separable from the claims for non-monetary relief.

In appropriate cases, the Ninth Circuit has applied a prudential exhaustion requirement in the absence of a statutory mandate for exhaustion of remedies. *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir.1992). Exhaustion is appropriate where

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir.1990) (quoting *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir.1983)). All of these considerations suggest the need to exhaust administrative remedies in this case. (1) The agency's expertise in the administration of the SSI program is essential to a court's understanding of the case. The agency is in the best position to determine what information it needs to make eligibility decisions and to evaluate what burdens would be imposed upon whom by different methods of gathering information. (2) The administrative scheme established in 45 C.F.R. § 85 was constructed to assure that the Department of Health and Human Services (of which SSA is a part) conforms to the demands of the Rehabilitation Act in its administration of federal programs. If this suit, which directly implicates the manner in which the Department administers a federal program, is allowed to proceed without reference to 45 C.F.R. § 85, it might inappropriately encourage deliberate bypass of the administrative scheme in other cases. (3) The remedy that plaintiffs seek is the adoption and implementation by SSA of new application procedures. SSA's involvement and input will be indispensable toward that end. Plaintiffs have made no showing that their needs could not be satisfied through an administrative procedure. On the contrary, SSA's counsel explained at oral argument that claimed needs of deaf SSI applicants had been accommodated through the administrative process. On the record before us, we have no reason to believe that SSA, given the impetus of a complaint filed pursuant to HHS regulations, would not develop appropriate application procedures for these plaintiffs without the intervention of the court.

Exhaustion is not required where resort to the agency would be futile. *El Rescate*, 959 F.2d at 747. Exhaustion is futile where the agency's position on an issue "appears already set," and it is "very likely" what its result would have been. *Id.; SAIF Corp./Oregon Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir.1990). There is no indication on the record that such is the case here. The complaint alleges no facts suggesting that it would be futile for the plaintiffs to approach SSA first. In its brief and at oral argument, SSA has consistently taken the position that it is willing to consider plaintiffs' grievances, but prefers to do so in an administrative, as opposed to a litigation, context. Should this not occur within a reasonable time after proper application, plaintiffs will have recourse to the courts.

We have previously found claims under the Rehabilitation Act to be appropriate candidates for exhaustion of remedies. In *Greater Los Angeles Council on Deafness, Inc. v. Baldridge*, 827 F.2d 1353 (9th Cir.1987), plaintiffs claimed that the failure of public television stations to caption their programs for the hearing-impaired violated section 504. We held that

> the judicially created doctrine of exhaustion of administrative remedies is appropriate here. The court should wait until the Department has ruled on the administrative complaint before it reviews the Department's action vis-a-vis the [Rehabilitation] Act. The creation of an administrative record will best serve "the competing interests of the court, the agency, and the aggrieved individual[s]."

*Id.* at 1362 (citation omitted).

Plaintiffs' grievances will, we hope, be resolved by the agency acting in concert with those parties affected by its procedures. In the event that the grievances are not resolved or that monetary relief is still sought, the plaintiffs may return to federal court. At that time, they may frame their claims for grievances in a multi-count complaint for declaratory and injunctive relief under the APA and for declaratory, injunctive, and monetary relief under the Rehabilitation Act. The complaint would be supported, if the administrative process has worked as it should, by a comprehensive administrative record that would afford the court a proper basis for decision.

## CONCLUSION

We affirm the district court's dismissal of the complaint but without prejudice and do so on grounds different than those relied upon by the district court. We AFFIRM in part. The complaint is DISMISSED without prejudice.