**Leslie MENDEZ, Plaintiff,**

v.

**Mark GEARAN, director of the U.S. Peace Corps, Defendant.**

**No. C 95–4075 TEH.**

United States District Court,
N.D. California.

Nov. 21, 1996.

---

Kent Jones, Graham & James, L.L.P., San Francisco, CA, Vicki Laden, Legal Aid Society of San Francisco, San Francisco, CA, for plaintiff.

John H. Hermann, U.S. Attorney's Office, San Francisco, CA, Kirby Mullin, United States Peace Corps, Washington, D.C., for defendant.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter came on for oral argument before the Court on November 18, 1996, upon defendant's motion to dismiss.

## FACTUAL BACKGROUND

Plaintiff Leslie Mendez was denied entry to the United States Peace Corps when medical officials learned that she was taking an anti-depressant medication. Plaintiff instigated this action in federal court under § 504 of the Rehabilitation Act. 29 U.S.C. § 794. Plaintiff asks this Court to declare she is medically eligible to serve and reinstatement, reasonable attorneys' fees, and an injunction barring the Peace Corps from utilizing its current criteria concerning psychological conditions. FAC, (P.F.R.) ¶ 1–4. Defendant now moves to dismiss on the grounds that plaintiff's claim is appropriately brought under the Administrative Procedures Act (APA), which has an exhaustion requirement that plaintiff has failed to complete.

## LEGAL STANDARD

Because federal courts are courts of limited jurisdiction, a federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). The plaintiff therefore always bears the burden of establishing subject matter jurisdiction. *See, e.g., KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936); 1

Schwarzer, *Federal Civil Procedure Before Trial* 9:77.

A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or attack the existence of subject matter jurisdiction in fact. *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979). Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. *Id.*

While a court must give deference to a plaintiff's factual allegations when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court is not obligated to take plaintiff's allegations as true when considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). *Id.* (explaining that where a court is faced with a factual attack on subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims").

## DISCUSSION

The issue to be determined here is whether plaintiff's claim is appropriately brought under the APA or § 504 of the Rehabilitation Act.

### I. Effect of Proceeding Under Either § 504 or the APA

If the APA is the governing statute, this court will have to dismiss this case for failure to exhaust administrative remedies. Under the APA, judicial review is only available for *final* agency actions. *Heckler v. Chaney,* 470 U.S. 821, 827, 105 S.Ct. 1649, 1653, 84 L.Ed.2d 714 (1985). Section 10(c) of the APA "explicitly requires exhaustion of all intra-agency appeals mandated either by

statute or by agency rule...." *Darby v. Cisneros,* 509 U.S. 137, 147, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993). The procedures for discrimination complaints against the Peace Corps are set out in the Code of Federal Regulations. Those procedures require a complainant to follow a four-step process: (1) contact the appropriate counselor, (2) file a complaint with the Peace Corps EO director, (3) appeal to the Director of the Peace Corps, and (4) file an action in district court. 45 C.F.R. part 1225. Plaintiff has not alleged to have exhausted any of the three potential administrative remedies before filing in district court. Accordingly, if this action may only be brought under the APA, this Court would not have subject matter jurisdiction and must dismiss.

The Rehabilitation Act, however, does not have an administrative remedies exhaustion requirement. *Greater Los Angeles Council on Deafness, Inc. v. Baldrige,* 827 F.2d 1353, 1361, fn. 6 (9th Cir.1987). Consequently, a plaintiff alleging discrimination on the basis of disability by a federal agency would have immediate recourse to federal court under § 504.

### II. Right of Action Under § 504

The Ninth Circuit has established that individuals have a private right of action against federal agencies for disability discrimination under § 504 of the Rehabilitation Act.[1] *J.L. v. Social Security Administration,* 971 F.2d 260, 269 (9th Cir.1992) ("Therefore, we conclude that a plaintiff states a claim under the Rehabilitation Act by alleging that the government's action ... discriminates on the basis of handicap"); *Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990) *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991) ("[The Rehabilitation Act] has been construed to provide a private right of action under section 504.").

---

1. Section 504(a) of the Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance or under an program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a).

The remedies provision for violations of § 504(a) is set out in § 505(a)(2) which allows for the remedies, procedures, and rights set forth under title VI of the Civil Rights Act of 1964; however § 505(a)(2) only applies to persons aggrieved by a "recipient of Federal assistance or a Federal provider of such assistance." 29 U.S.C. § 794a(a)(2). Noticeably absent in the § 505(a)(2) remedies provision is any reference to programs or activities conducted by any Executive agency which are included in § 504(a).

The Supreme Court has determined that by not identifying federal agencies in § 505(a)(2), Congress revealed that "[it] did not intend to treat all § 504(a) defendants alike with regard to remedies." *Lane v. Pena,* —— U.S. ——, ——, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996). As a consequence, the Court held that Congress did not express an intent to waive the government's sovereign immunity against monetary damages for violations of § 504. *Lane,* at ——, 116 S.Ct. at 2096.

With monetary damages unavailable to plaintiffs suing a federal agency under the Rehabilitation Act, the private right of action established under § 504(a) by the Ninth Circuit is limited to equitable remedies.

### III. *Right of Action Under the APA*

An individual adversely affected or aggrieved by the action of an agency is entitled to judicial review of the action under the APA. *Heckler,* at 827, 105 S.Ct. at 1653. A reviewing court has the power under the APA to set aside any agency actions that are "not in accordance with the law."[2] The Ninth Circuit has explicitly noted that the APA is an appropriate means for review of federal agency actions that allegedly violate the Rehabilitation Act. *J.L.,* 971 F.2d at 268 (APA is both available and adequate to review plaintiffs' claims for injunctive and declaratory relief under the Rehabilitation Act.).

Like claims under § 504(a) against federal agencies, no money damages are available under the APA.

### IV. *Previous Standards for Distinguishing § 504 and the APA*

As is clear from the above discussion, § 504 and the APA provide overlapping rights of action for injunctive relief for plaintiffs alleging discrimination on the basis of a disability by a federal agency. *J.L.,* at 264 ("... plaintiffs alleging discrimination by the government may have a cognizable claim under either statute or both."). The two statutes have very different procedural means for having a claim reviewed and this Court must determine whether one statute, at times, provides a more efficient and fair means to resolve a claim than the other.

The Ninth Circuit has already attempted to create a standard for determining which cases ought to be analyzed under the APA and which under the Rehabilitation Act. *J.L.,* 971 F.2d at 260–269. In *J.L.,* the Court identified two lines of demarcation that can used to determine which statute is most appropriate for various claims of disability discrimination against a federal agency. First, the proprietary/regulatory dichotomy: While the Ninth Circuit "has avoided adopting the proprietary/regulatory dichotomy as the law of this circuit," it "does serve a limited function as a non-binding indicator of whether the APA should provide the dominant paradigm for decision." *J.L.,* 971 F.2d at 269.[3]

---

**2.** *Wileman Bros. & Elliott, Inc. v. Espy,* 58 F.3d 1367 (9th Cir.1995) *cert. granted* —— U.S. ——, 116 S.Ct. 1875, 135 L.Ed.2d 171 (1996) (Under the APA, Court of Appeals analyzes whether agency action is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.)

**3.** The proprietary/regulatory distinction has been utilized in other contexts; however its past usage does not suggest that it is an easily workable distinction that would assist courts in the present context. The distinction has often been the subject of criticism and has, in some contexts, been

specifically rejected as unworkable. When using the distinction under the Federal Torts Claims Act, "[t]he distinction between 'proprietary' and 'governmental' activities has aptly been described as a 'quagmire.'" *City of Lafayette v. Louisiana Power & Light Comp.,* 435 U.S. 389, 433, 98 S.Ct. 1123, 1147, 55 L.Ed.2d 364 (1978) (Stewart, J. Dissenting). In the area of tax immunity cases it has been said that "[w]e regard as untenable the distinction between governmental and proprietary interests on which the [tax immunity] cases rest to some extent." *State of N.Y. v. U.S.,* 326 U.S. 572, 586, 66 S.Ct. 310, 316,

The *J.L.* opinion attempts to clarify some of the confusion and uncertainty surrounding the proprietary/regulatory dichotomy by linking it to the second distinction, which centers on the type of relief sought. The Court noted that when a regulatory action is challenged, plaintiffs are most likely to seek injunctive relief and when proprietary actions are challenged the desired remedy will generally be money damages. The *J.L.* opinion then concludes that regulatory/injunctive actions are most appropriate for analysis under administrative law principles and proprietary/money damages actions are best examined under tort-like principles. It followed that the appropriate paradigm for regulatory/injunctive actions is the APA and for proprietary/monetary actions is § 504.

After the Supreme Court's elimination of potential money damages under § 504 in *Lane*, the vitality of the *J.L.* paradigm is severely weakened because no plaintiff can seek money damages either under § 504 or the APA. Further, the regulatory/proprietary distinction is explicitly not the law of this circuit and, without a link to the damages/injunctive relief distinction, is too unwieldy to apply, even as a limited guiding principle. *See,* note 3, *supra.*

■ Defendants urge this Court to retain the damages/injunctive distinction and hold that in the light of *Lane,* plaintiffs do not have a right of action under § 504(a) against federal agencies. The defendants fail to recognize that *Lane* does not have the effect of eliminating actions, only eliminating one formerly available remedy. The potential actions that the *J.L.* Court determined were appropriate for analysis under 504(a) are still viable and are still best analyzed under 504(a), even if only equitable relief is available. The nature of the relief was not the controlling factor for the distinction drawn in *J.L.;* instead, the nature of the relief was a close proxy for the types of cases the were more appropriately analyzed under one statute than the other.

This Court, then, is left with no clear standard for determining which statute is appropriate for application in various disability discrimination actions against federal agencies. To determine what statute provides the best rubric here, this Court will examine the advantages and disadvantages of applying one statute over the other in various contexts.

## V. Application of the APA

The APA provides a remedy for plaintiffs claiming that an agency action is "not in accordance with the law." *Espy,* 58 F.3d 1367, 1374. *See, Cousins v. Secretary of U.S. Dept. of Trans.,* 880 F.2d 603, 608–09 (1st Cir.1989). The primary advantage of the APA in this context is that it offers the administrative agency an opportunity to review the facts giving rise to the claim, the policies motivating the action, and to develop a record for a reviewing federal court to examine. 5 U.S.C. §§ 701–706. Many potential claims may never reach federal court but will be resolved in the agency review. Further, for the actions that are reviewed by federal court, the court can rely on the record created by agency. As the policy behind the APA reveals, that record will be must useful to a reviewing court when it involves facts, policies, and statutes that are within the agency's expertise.

The APA embodies the notion that agencies are uniquely qualified to interpret information they routinely consider. *Mt. Graham Red Squirrel v. Espy,* 986 F.2d 1568, 1571 (9th Cir.1993) (Review of agency action under the APA is narrow, especially where decision implicates agency expertise); *J.L.,* 971 F.2d at 268 (The court maintains its "deferential standard of review over actions within the agency's discretion or over reasonable agency interpretations of statutes it is charged with administering."). Consequently, the APA serves as the ideal paradigm for reviewing allegedly discriminatory agency ac-

90 L.Ed. 326 (1946) (Reed, J., Concurring). Finally, the distinction has led a very uneven existence in First Amendment jurisprudence. "The Court ... reintroduc[es] today into our First Amendment law a strict doctrinal line between the proprietary and regulatory functions of gov-

ernment which I thought had been abandoned long ago." *International Society for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (Kennedy, J., Concurring).

tion when the focus of the review will be on information uniquely within the expertise of the agency.

Conversely, when the focus of the review is on information outside the ken of the agency, review under the APA may not be the most efficient avenue. When, for example, the primary question to be resolved, in the review of an agency action, is the application of a statute that is not connected to the agency, the court reviews the question de novo. *J.L.*, at 267. Similarly, a reviewing court does not defer to an agency's interpretation of a statute unrelated to its functions. *California National Guard v. FLRA*, 697 F.2d 874, 878 (9th Cir.1983) (Judicial deference need not attach to FLRA's interpretation of the Technician's Act since it is not the agency with primary responsibility for administrating and interpreting that act); *IRS v. Federal Labor Relations Authority*, 706 F.2d 1019, 1022 (9th Cir.1983) ("While this court may give 'considerable' weight to the Authority's interpretation of the Labor–Management Chapter, no such deference is owed to the Authority's reading of an EEOC regulation or to the Authority's resolution of the conflict between the statute and the EEOC regulation.").

Where the primary issue in a challenge to a federal agency's action is the application of a statute that the agency is not uniquely qualified to interpret, utilizing the APA would not be an efficient use of resources. The administrative agency would analyze its action under its interpretation of a statute then a reviewing court would have to reanalyze the agency's action under its own view of the statute, with no deference to the agency's legal findings.

█ The distinctions drawn in *J.L.* reflect an attempt by the Ninth Circuit to establish easily identifiable proxies for distinguishing between cases that primarily focus on information within the expertise of the agency and cases that primarily focus on questions of law outside of the agency's expertise. Consequently, in the light of the *Lane* holding which makes the proxy distinctions developed in *J.L.*, inapplicable, this Court holds that when presented with a cause of action

that can be brought under the either the APA or the Rehabilitation Act, courts must determine the appropriate statute to apply by examining whether the claim primarily requires a focus on facts, policies, or statutes the agency customarily considers and interprets, or questions of law or fact more appropriately analyzed in the first instance by a court.

## VI.  *Application of Standard Distinguishing § 504 and the APA*

If this case focussed primarily on the policy of the Peace Corps in screening volunteers, an administrative review would be particularly helpful for resolution of the matter. Review of the case would require insight into how the Peace Corps operates, what the Peace Corps' ultimate mission is, what its volunteers do in the field, and how various medical conditions affect what volunteers are able to perform in forwarding the mission of the Peace Corps. In other words, the primary focal point of the review would be the Peace Corps itself.

An analysis of such a claim would compare the goals of the Peace Corps and its use of the medical screening procedures to achieve that goal to determine whether the exclusionary policy is unreasonable and discriminatory, *i.e.*, "in accordance with the law." In other words, while the Peace Corps can take physical limitations into account, a court must ask whether the exclusionary policies, in light of the purposes and goals of the Peace Corps arbitrarily deprive genuinely qualified handicapped persons opportunities. *Southeastern Community College v. Davis* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Such an analysis would require "necessary insight into the operations" of the Peace Corps. *J.L.*, 971 F.2d at 270.

When reviewing the fundamental policy of the Peace Corps, an administrative record developed by the incomparably knowledgeable Peace Corps would be helpful to a reviewing court.[4] Further, the process of going through the administrative proceeding

---

4. "The Agency is in a far better position to determine how best to formulate and implement systemic change than is a court." *J.L.*, 971 F.2d at 265.

may even illuminate the agency and allow it to change its policies on its own accord. It is clear to this Court that if this action is primarily a challenge to the general medical screening policies of the Peace Corps, the APA would provide the appropriate means for bringing the action to federal court.

On the other hand, if the claim here is primarily focussed on issues outside the expertise of Peace Corps, a reviewing court would not be significantly benefitted by an administrative record. In such a case, the primary focus of review would be the Rehabilitation Act, which gives rise to the plaintiff's claim. Consequently, the analysis would be essentially limited to determining whether the individual is considered disabled under the act, is otherwise qualified for the position sought, and is being excluded solely by reason of her disability. *See, Smith v. Barton* 914 F.2d 1330, 1338 (9th Cir.1990) *cert. denied* 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995;[5] *Bentivegna v. U.S. Dept. of Labor,* 694 F.2d 619 (9th Cir.1982).

Unlike a claim that primarily challenges the basic policies of an agency, the analysis of whether the plaintiff is otherwise qualified and excluded solely because of her disability does not require the examination of the whole operation of the Peace Corps—a task for which the Peace Corps would be uniquely qualified. Instead, a reviewing court would explore what this individual is retained to do, whether her disability affects her ability to accomplish those tasks, and whether the Peace Corps can accommodate her disability. *See generally, Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (Requirements for review a § 504 claim).

■ The agency's ability to assist a court in reviewing this type of case is minimal. The Peace Corps does not have special expertise in the Rehabilitation Act nor special insight into the nature of the plaintiff's dis-

ability. The relevant expertise of the Peace Corps, therefore, would be limited to describing the type of work the plaintiff has been retained to accomplish and how it believes the disability would affect the carrying out of the required tasks. Accessing that information does not require an administrative hearing or similar procedure. In fact, courts are quite accustomed to gathering those types of information and opinions. Consequently, this court finds that it would be inefficient to use the standards created by the APA in addressing a claim against a federal agency that primarily focusses on § 504 of the Rehabilitation Act, a statute unrelated to the agency's expertise.

## VII. *Issues Raised in Present Case*

■ In this case, the type of individualized discrimination claim best suited for analysis under § 504 and the kind of request for systemic change most appropriate for APA review, are both present. Plaintiff, Leslie Mendez, prays for three types of relief under one cause of action pursuant to the Rehabilitation Act: (1) An order requiring the Peace Corps to certify the plaintiff as medically eligible for service in the Peace Corps, (2) reasonable attorneys' fees, and (3) an injunction barring the Peace Corps from utilizing its current criteria concerning psychological conditions. FAC, (P.F.R.) ¶¶ 1–4.[6]

The weight of plaintiff's complaint is oriented toward addressing her individual concerns.[7] This Court interprets plaintiff's complaint as having a primary purpose of securing Ms. Mendez's position in the Peace Corps and a secondary purpose of protecting future Peace Corps volunteers from being assessed under the criteria that barred Ms. Mendez.

Consequently, under the rationale of *J.L.* and the effect of *Lane,* this Court concludes

---

5. "To prevail in a case brought under section 504, a plaintiff must show that the plaintiff is:
   (1) a handicapped person under the Act;
   (2) otherwise qualified for the position sought;
   (3) being excluded from the position solely by reason of plaintiff's handicap; and
   (4) seeking a position that exists as part of a program or activity receiving federal assistance." *Smith,* at 1338.

6. Plaintiff does not oppose the dismissal of her prayer for monetary damages, in light of *Lane.*

7. The Court notes that ¶¶ 6–21 and 24–29 of plaintiff's first amended complaint relate to her individual claim while ¶¶ 22–23 and 30 relate to her challenge to the application of the Peace Corps general policy.

that plaintiff's case is more appropriately brought under the standards established by § 504 of the Rehabilitation Act. This case is not one that would benefit significantly from the type of administrative review that would occur if this case proceeded under the APA. Because the Rehabilitation Act does not require the exhaustion of administrative remedies, plaintiff's claim is ripe for review in this court.

Defendant's motion to dismiss is hereby DENIED.

IT IS SO ORDERED.